(No. 42757.— )
GIBRALTAR INSURANCE COMPANY, Appellant, *vs.* MICHAEL VARKALIS *et al.*, Appellees.

*Opinion filed Sept. 29, 1970.—Rehearing denied Dec. 3, 1970.*

Narusis and Stimson, of Chicago, (John Narusis, Jr., of counsel,) for appellant.

Griffin & Gallagher, of Chicago, (Daniel A. Gallagher, of counsel,) for appellees.

Mr. Justice Culbertson delivered the opinion of the court:

Plaintiff, Gibraltar Insurance Company, filed its declaratory judgment complaint in the circuit court of Cook County against Michael Varkalis, administrator of the estate of Veronica Varkalis, deceased, hereinafter referred to as defendant, and its insured, Kenneth Robinson, seeking a judicial declaration that it was under no responsibility to defend Robinson or pay any judgment rendered against him in a wrongful death action brought by defendant as the result of the murder of his decedent Veronica Varkalis by Robinson through the use of a motor vehicle. The circuit court, after granting leave to plaintiff allowing the filing of an amended complaint, ultimately dismissed the cause with prejudice on motion of defendant. On appeal the appellate court initially unanimously affirmed the determination of the circuit court. On rehearing, the appellate court again

affirmed the trial court's dismissal, this time with one justice dissenting. (115 Ill. App. 2d 130.) We have allowed plaintiff's petition for leave to appeal from the appellate court's decision. 43 Ill.2d R. 315.

An examination of the pleadings, motion, and exhibits in the record before us discloses that on May 13, 1961, Kenneth Robinson caused the death of Veronica Varkalis, a passenger in his car, by pushing her out of the automobile and driving it repeatedly over her body. Robinson pleaded guilty to a charge of murder and was sentenced by the circuit court of Cook County to a term of not less than 15 nor more than 30 years in the penitentiary. Thereafter, on July 13, 1961, according to an affidavit of one of defendant's counsel, an adjuster for plaintiffs identified in the affidavit as "Mr. Ca[r]sati", made a phone call to defense counsel advising that plaintiff was "* * * considering the proposition that Gibraltar Mutual Casualty Company had no liability to defend the claim of Veronica Varkalis, because it had evidence to the effect that the injuries inflicted upon Veronica * * * by * * * Kenneth Robinson were inflicted intentionally * * *." By affidavit of Roland Casati, identified as the president of plaintiff, this telephone conversation is denied. In any event, subsequently, on March 19, 1962, defendant filed an action against Robinson seeking damages for the wrongful death of his decedent, Veronica Varkalis. On April 3, 1962, summons was served on Robinson while he was in the penitentiary, but it does not appear that he forwarded the summons to his insurance company, the plaintiff. In this connection, plaintiff, through the aforementioned affidavit of its president, states that it first became aware of the defendant's claim against its insured through receipt of a February 13, 1964, letter from defendant's counsel advising that no appearance had been filed on Robinson's behalf in the pending wrongful death action. On March 19, 1964, plaintiff, through counsel retained by it, entered an appearance on behalf of Robin-

son in that lawsuit, and on the same date an answer to the complaint was filed on behalf of Robinson by such counsel. On April 13, 1964, a motion to dismiss the complaint was filed by the same counsel, which motion was heard and denied on May 11, 1964. The answer theretofore filed was ordered to stand as the answer to the complaint.

Again according to the affidavit of plaintiff's president, "* * * Kenneth Robinson was notified on or about July 13, 1965, that a defense would be provided, but Gibraltar would not extend coverage under the policy *via* verdict or judgment because of the wilful characteristics of his conduct on the date of the accident, May 13, 1961." On October 28, 1966, the instant declaratory judgment action was filed. On May 15, 1967, the court allowed the attorneys theretofore retained by plaintiff to withdraw as counsel for Robinson in the wrongful death suit, and entered an order appointing new counsel to act on his behalf, such counsel to be paid by plaintiff. On the same day, judgment in the amount of $30,000 was entered in favor of defendant against Robinson in the wrongful death action, from which judgment the sum of $4500, theretofore obtained by defendant in other litigation, was deducted, making the final judgment rendered against Robinson in the amount of $25,500.

Plaintiff's declaratory judgment action was based upon a provision in the insurance policy in question excluding liability coverage on behalf of the insured for bodily injury, including death resulting therefrom "* * * caused intentionally by * * * the insured." The merits of this contention were not reached, however, for both the trial and appellate courts concluded that plaintiff's declaratory judgment action was barred by the statute of limitations. The appellate court further held that plaintiff was, by virtue of its conduct as shown by the pleadings, estopped from asserting its policy defense. We believe that both the trial court

and appellate court erred in part in their reasoning but nonetheless, as shown below, reached a correct result.

The first problem with which we must deal involves the ascertainment of the date upon which plaintiff's declaratory cause of action accrued. Both the trial and appellate courts with little discussion of the matter fixed this date as May 13, 1961, the date Veronica Varkalis was killed by plaintiff's insured. We must disagree with this view, for at such time in our judgment there existed no "actual controversy" between the plaintiff and its insured or the prospective wrongful death claimant as required by the statute relating to declaratory judgments. (Ill. Rev. Stat. 1965, ch. 110, par. 57.1.) At the time of the accrual of the wrongful death action it was merely a matter of speculation as to whether such a controversy would ever arise. Thus no one could say with any certainty on May 13, 1961, or for some time thereafter that any claim or action would ever be pursued on behalf of the estate of Veronica Varkalis so as to actualize the potential dispute as to coverage under the insurance policy. To assert that a declaratory cause of action nonetheless arose in favor of the insurance company at that time fails to recognize this important realistic consideration. We believe that in cases where, as here, all determinative facts giving rise to the potential policy coverage dispute have occurred prior to the initial demand upon the insurance company, no actual controversy arises among the parties until such time as the issuing company is called upon to either pay or defend a claim on behalf of its insured under the terms of the policy in question. Since an actual controversy is required as a condition precedent to the institution of an action seeking a declaration of rights under the insurance policy, no such action can accrue until such time. Until the insurance company is called up to defend or pay the claim, the entire matter is within the realm of mere possibility, and parties ought not be placed in the position of failing to act at their peril in

such unpredictable circumstances. (*Cf. Madison* v. *Wedron Silica Co.*, 352 Ill. 60, 62, *Treece* v. *Southern Gem Coal Corp.*, 245 Ill. App. 113, 118-19.) The date set herein for the accrual of a declaratory cause of action under the circumstances here present is, we believe, ordinarily capable of ready determination and fully recognizes the natural order of events. We believe it also precludes the necessity of the premature filing of time consuming and court congesting litigation. In the present case it conclusively appears that plaintiff was initially called upon to defend the conduct of its insured with regard to the death of defendant's decedent on February 13, 1964, the date of the writing, and apparently, the delivery, of the letter from defendant's counsel in the wrongful death action to plaintiff advising the latter that no appearance had yet been filed on behalf of its insured in that lawsuit.

Having determined February 13, 1964, as the date of the accrual of the instant action, we need not decide here whether actions for declaratory judgment as to the rights of the various parties under a contract of insurance are governed by the five-year statute of limitations as "* * * civil actions not otherwise provided for" (Ill. Rev. Stat. 1965, ch. 83, par. 16), or, rather, the ten-year statute of limitations as actions on written contracts. (Ill. Rev. Stat. 1965, ch. 83, par. 17.) Plaintiff here filed its action on October 28, 1966, well within the time permitted by either statute. We accordingly express no opinion on the matter.

As noted already herein, the appellate court, as a dual ground for its decision, held that, wholly apart from the limitations question, plaintiff had by its actions on behalf of the insured waived any policy defense to liability for the conduct of the insured concerning Veronica Varkalis's death. For the reasons hereafter specified, we believe such determination was correct. As noted earlier in our discussion of the facts disclosed by the record, plaintiff was re-

quested to cause the entry of an appearance on behalf of Kenneth Robinson in the wrongful death action on February 13, 1964. Apparently pursuant to that request, plaintiff caused counsel retained by it to enter such appearance on March 19, 1964. On that same day said counsel also filed an answer to the wrongful death complaint. Thereafter, on April 13, 1964, said counsel filed a motion to dismiss the wrongful death complaint, which motion was heard and denied by the court on May 11, 1964. Notwithstanding this continued representation of Robinson in the wrongful death action by plaintiff, however, not until July 13, 1965, did it advise him that it was defending the action on his behalf under a reservation of its rights arising under the insurance policy. Under such circumstances we believe it clear that plaintiff has waived its right to assert its policy defense. As observed by the Appellate Court in *Apex Mutual Insurance Co.* v. *Christner,* 99 Ill. App. 2d 153, 161, "It is well settled that assumption of the insured's defense constitutes a waiver by the insurer of all questions of policy coverage. [Citations.] If, therefore, in spite of doubts as to coverage, the insurer elects to take over the insured's defense, it will afterwards be estopped from denying its own liability under the policy." (See also *Gallaway* v. *Schied,* 73 Ill. App. 2d 116, 126.) If plaintiff had doubts about its liability under the policy in question it could have easily given Robinson prompt notice that it would defend the wrongful death action under a reservation of rights, or it could have refused to defend and instituted a declaratory judgment action seeking to relieve it of any responsibility to Robinson. (See *Apex.*) Plaintiff will not be heard to say that it was unaware of the possible existence of the policy defense at the time it assumed the representation of its insured by causing an entry of his appearance, for the defense to coverage sought to be asserted had its inception on May 13, 1961, plaintiff's insured was convicted of the murder of defend-

ant's decedent on January 2, 1962, and plaintiff's counsel apparently felt sufficiently advised of the circumstances of the case as to enable them to file an answer in the wrongful death action on March 19, 1964. In this connection, count II of the wrongful death complaint alleges on its face that Robinson wilfully perpetrated the death causing injuries to defendant's decedent, thus clearly raising the policy defense question sought to be asserted in this action. Nonetheless, plaintiff did not notify the insured of its intention to assert a policy defense until July 13, 1965. During the interim it acted on behalf of Robinson as though no questions of policy coverage were involved, thus clearly causing him to wholly rely for his defense on the efforts of plaintiff.

For the foregoing reasons, the judgment of the appellate court must be and accordingly is affirmed.

*Judgment affirmed.*