636 P.2d 111

The WESTERN CASUALTY & SURETY COMPANY, Plaintiff-Appellee,

v.

Sharon J. EVANS and Josephine C. Fenn and Christine Fridena, Administratrix for the Estate of Daniel Fridena, Jr., Defendants-Appellants.

No. 1 CA–CIV 4624.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 20, 1981.

Rehearing Denied Oct. 26, 1981.

Review Denied Nov. 17, 1981.

Rawlins, Ellis, Burrus & Kiewit by James W. Hill and Redfield T. Baum, Phoenix, for defendants-appellants Evans and Fenn.

Murray Miller, Phoenix, for defendant-appellant Fridena.

Jones, Teilborg, Sanders, Haga & Parks, P.C. by Frank A. Parks and Linda A. Drake, Phoenix, for plaintiff-appellee.

## OPINION

WREN, Chief Judge.

In this appeal, we consider whether a declaratory judgment action filed by appellee Western Casualty & Surety Company was barred by either a statute of limitations or the doctrine of laches. We answer both questions in the negative.

Appellants are Sharon J. Evans, Josephine C. Fenn (her mother) and Christine Fridena, Administratrix for the estate of Daniel Fridena, Jr., M.D. In June of 1966, Evans was involved in a motorcycle/automobile collision in which she suffered serious injury to her right femur. Dr. Daniel Fridena, Jr. performed surgery on the leg, after which it was noted that her right leg was 1½ inches shorter than her left leg. In January of 1967, a second operation was performed by Dr. Fridena for the purpose of lengthening her right leg. The operation, however, resulted in a further shortening of the leg so that it was three inches shorter than the left one. Subsequently, on August 11, 1970, appellants Evans and Fenn filed a medical malpractice suit against Christine Fridena[1] and Physicians & Surgeons Hospital, Inc., the hospital in which the second operation took place.[2]

Appellee represented Fridena in the malpractice suit under a "reservation of right."[3] On July 21, 1977, a jury returned a verdict in favor of Evans and Fenn in the

---

1. The original suit, filed on June 4, 1968, named Dr. Fridena as defendant, but was subsequently dismissed and refiled after his death. Christine Fridena, as administratrix of the estate of Dr. Fridena, was then named defendant.

2. As noted, the appellants in this case are the former plaintiffs and defendant in the underlying malpractice suit. Former adversaries are thus now co-parties and have brought appeal to this court by filing one set of briefs joined in by all three. This presents us with a problem. Although both sets of appellants share in their desire to have the judgment reversed, their different positions at the trial level necessitate that we resolve the issues raised on appeal on different grounds. Thus, when necessary, each issue raised will be resolved as to Evans and Fenn first and then as to Fridena.

3. The reservation serves notice on an insured that although the insurer is defending him, it is reserving its right to contest coverage under the policy at some later date.

amount of $300,000.00.[4] Appellee then filed, on October 21, 1977, an action for declaratory judgment[5] in which it sought a declaration that it was not liable to Fridena and Physicians & Surgeons for insurance coverage on the date of the malpractice occurrence. Appellee's motion for summary judgment was granted in the court's July 26, 1978, judgment, which states in pertinent part:

1. That Plaintiff's general liability insurance policy issued to PHYSICIANS AND SURGEONS HOSPITAL, INC., dba Phoenix Community General Hospital, Inc., was effectively cancelled on January 9, 1967.

2. That the damage sustained by SHARON J. WILCOX (nee Evans) resulted from surgery performed on January 16, 1967, after cancellation of the insurance policy, and therefore, PHYSICIANS AND SURGEONS HOSPITAL, INC. was not an insured of THE WESTERN CASUALTY & SURETY COMPANY on January 16, 1967.

3. That DR. DANIEL FRIDENA was not an insured under Plaintiff's policy of general liability insurance for his "acts or omissions of a professional nature," including his professional decisions to perform surgery and the actual surgery itself.

4. That Plaintiff defended Defendants FRIDENA and PHYSICIANS AND SURGEONS HOSPITAL in the underlying action under a timely reservation of rights; that a justiciable controversy arose between Plaintiff and Defendants herein when Judgment was entered in the underlying action on July 25, 1977; and therefore that this declaratory action is not barred by the limitation period of A.R.S. § 12–544.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment of Plaintiff THE WESTERN CASUALTY & SURETY COMPANY be and the same is hereby granted;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff have Judgment against the Defendants on its Complaint and that Plaintiff shall have and recover its lawfully taxable costs.

Evans and Fenn first argue that appellee's declaratory judgment action was barred by the four-year limitation of action set forth in A.R.S. § 12–544.[6] They contend that appellee's cause of action "accrued", and the period of limitations began to run, when Evans and Fenn filed the original claim in 1968 because that is when appellee became "aware" of the claim. They conclude that appellee's filing of the declaratory judgment action some nine years after the original claim was filed should therefore have been barred. We disagree.

■ We first note that the question of whether and when statutes of limitations are applicable to declaratory relief actions is a less than clear area of the law. For a discussion setting forth various approaches taken by appellate courts considering this question, see Annot.: *Statute of limitations or doctrine of laches in relation to declaratory actions*, 151 A.L.R. 1076 (1944), 22 Am. Jur.2d *Declaratory Judgments* § 78, pages 940–41, and 26 C.J.S. *Declaratory Judgments* § 108, pages 240–44. We need not reach this question, however. Even if we assume that the four-year period of limitations is applicable, appellee filed well within the time limit, since no cause of action accrued, and therefore no period of limitations began to run, between appellee and Evans and Fenn until judgment was entered against Fridena in the underlying malpractice suit. Until that point, no privity existed between appellee and Evans and Fenn to support a claim of one against the other. *Miller v. Market Men's Mutual Insurance Company*, 262 Minn. 509, 115 N.W.2d 266 (1962); *Manukas v. American*

4. Subsequently affirmed on appeal to the Arizona Supreme Court. *Fridena v. Evans*, 127 Ariz. 516, 622 P.2d 463 (1980).

5. A.R.S. § 12–1831, *et seq.*

6. A.R.S. § 12–544(3) provides for a four-year period of limitation "[U]pon an instrument in writing executed without the state." The insurance contract in this case was signed by appellee's agents in Kansas; thus appellants argue this is the applicable limitation period.

*Insurance Company*, 98 N.J.Super. 522, 237 A.2d 898 (1968); 44 Am.Jur.2d *Insurance*, § 1575, page 460; *cf. Smith Stage Co. v. Eckert*, 21 Ariz. 28, 184 P. 1001 (1919) (injured party must first obtain a judgment against insured before he has any remedy against indemnity company on policy). 8 *Appleman Insurance Law and Practice*, § 4832, page 434 (1981) (injured third party lacks standing to sue insurer until judgment is entered against insured).[7] Thus, appellee's filing of the declaratory judgment action within months of the malpractice judgment was well within the four-year period of limitations.

Fridena's position is somewhat different. As a legal representative of the insured, she could have brought a declaratory judgment action the moment a justiciable controversy existed. *Arizona State Board of Directors for Junior Colleges v. Phoenix Union High School District of Maricopa County*, 102 Ariz. 69, 424 P.2d 819 (1967). We find that a justiciable controversy existed between Fridena and appellee when appellee notified Fridena it was undertaking her representation *under a reservation of right.* From that point on, either party could have initiated a declaratory judgment action to clarify the coverage issue, but for reasons not apparent, neither did so. However, the fact that either party could have sought a declaration regarding coverage as of the filing of the reservation of right does not mean that the action accrued at that time for statute of limitations purposes. For an action to accrue for limitation purposes, some event in the nature of a breach of contract must have occurred. *Maguire v. Hibernia Savings & Loan Soc.*, 23 Cal.2d 719, 146 P.2d 673, 151 A.L.R. 1062 (1944). Here, the earliest moment a breach could arguably have occurred was when appellee filed its action for declaratory relief. Up to that point, appellee had represented its insured pursuant to the terms of its contract.

That a distinction exists between the point in time when a justiciable controversy arises which permits the filing of a declara-tory relief action, and when an action accrues for purposes of a period of limitations was recognized in *Maguire*:

> There is no anomaly in the fact that a party may have a right to sue for declaratory relief without setting in motion the statute of limitations. Quiet title actions, forerunners of declaratory actions, may be maintained when an adverse claim to property is asserted, but the period of limitations does not commence to run at that date.

23 Cal.2d at 734, 146 P.2d at 681, 151 A.L.R. at 1074.

Appellants refer us to numerous Arizona decisions in support of their contention that the declaratory judgment action accrued at the time of filing of the original complaint. *Kepner v. Western Fire Insurance Company*, 109 Ariz. 329, 509 P.2d 222 (1973); *State Farm Mutual Automobile Insurance Co. v. O'Brien*, 24 Ariz.App. 18, 535 P.2d 46 (1975); *Connolly v. Great Basin Insurance Company*, 6 Ariz.App. 280, 431 P.2d 921 (1967). These cases, however, dealt with the question of when a justiciable controversy arose to permit filing of a declaratory judgment action, not when such an action accrued for purposes of measuring an applicable period of limitations. We therefore find them to be of little use in resolving the issue presented here.

Appellants further refer us to the cases of *Gibralter Insurance Company v. Varkalis*, 46 Ill.2d 481, 263 N.E.2d 823 (1970), and *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). *Varkalis* involved an insurance company which undertook the defense of its insured without reservation and continued to defend him for some 16 months before advising him it was defending under a reservation of rights. A subsequent declaratory judgment action filed by the company was dismissed. The dismissal was upheld by the Illinois Court of Appeals on the statute of limitations and estoppel. As to the limitations issue, the appeals court "with little discussion of the matter" set the

---

7. This rule has been altered in many states through the enactment of so-called "direct action" statutes which permit suit by an insured third party directly against the tortfeasor's insurer. Arizona, however, has not enacted such a statute.

date the statute began to run as the date the tort occurred. On review to the Supreme Court of Illinois, the statute of limitations rationale was rejected and the dismissal affirmed on the basis of estoppel. In rejecting the statute of limitations rationale, however, the Illinois high court commented on the appellate court finding that the statute commenced running as of the date of the tortious act:

We believe that in cases where, as here, all determinative facts giving rise to the potential policy coverage dispute have occurred prior to the initial demand upon the insurance company, no actual controversy arises among the parties until such time as the issuing company is called upon to either pay or defend a claim on behalf of its insured under the terms of the policy in question. Since an actual controversy is required as a condition precedent to the institution of an action seeking a declaration of rights under the insurance policy, no such action can accrue until such time. Until the insurance company is called upon to defend or pay the claim, the entire matter is within the realm of mere possibility, and parties ought not be placed in the position of failing to act at their peril in such unpredictable circumstances.

46 Ill.2d at 485–486, 263 N.E.2d at 826. *Varkalis* thus dealt with a different situation than that presented here. The concern there was in establishing the *earliest* time in which an action can accrue for limitations purposes. The court found that, at a minimum, an "actual controversy" must exist before the statute commences running. Here, we consider the question of whether, in every case, the statute commences running when a justiciable controversy arises. In our opinion it does not. This appeal presents a case in point. Although the insurance company served notice it was defending under a reservation of right, it subsequently undertook the defense of its insured. It was the filing of a reservation of right which created a justiciable controversy sufficient to sustain the bringing of a declaratory action by either party. However, the measuring of the period within which the action *had* to have been brought

did not begin to run until appellee actually denied that coverage existed. *Maguire, supra.* In this case, that occurred when appellee filed its action seeking a declaration from the court that when the negligent act occurred, no coverage existed for which appellee was liable.

Finally, we find *Maryland Casualty Co. v. Pacific Coal & Oil Co., supra,* to be likewise inapposite. That case simply dealt with the question of whether an actual controversy had arisen in the context of the federal Declaratory Judgment Act (28 U.S.C. § 400). It in no way considered the question of when an action accrues for the purpose of measuring an applicable period of limitations.

 Evans and Fenn next argue that appellee's declaratory judgment action was barred by the doctrine of laches. Again, we disagree. The elements necessary to constitute laches are lack of diligence on the part of one party and injury to another due to the lack of diligence. *Leon v. Byus,* 115 Ariz. 451, 565 P.2d 1312 (App.1977); *Longshaw v. Corbitt,* 4 Ariz.App. 408, 420 P.2d 980 (1966). Both of these elements are lacking here. As just discussed, until the time the malpractice judgment was entered, neither Evans and Fenn nor appellee had any claim against the other since there was no privity. This situation changed when Evans and Fenn secured a judgment against Fridena, thus giving them the right to move against Fridena's policy in a garnishment proceeding. However, shortly thereafter appellee filed its declaratory judgment action. We therefore find that there was no lack of diligence on the part of appellee as to Evans and Fenn and reject their claim that the declaratory action was barred by the doctrine of laches.

 The same rationale holds true as to Fridena's argument on laches. The reservation of right under which appellee undertook its defense of Fridena's case constituted notice to her that insurance coverage was in question. She was free at any time during the litigation in the malpractice suit to bring an action against appellee to resolve this question but chose not to do so. This failure effectively precludes her from

now raising a laches argument to bar appellee's declaratory judgment action. *See Longshaw v. Corbitt, supra; Gaskill v. Neal,* 77 Idaho 428, 293 P.2d 957, 61 A.L.R.2d 501 (1956).

Appellants' final argument is that the trial court erred in its finding # 3[8] that Dr. Fridena was not an insured under appellee's policy for his "acts or omissions of a professional nature."

Since we affirm the judgment that no policy of insurance existed at the time of the negligent act, it is not necessary for us to rule on this issue.

Affirmed.

CONTRERAS, J., concurs.

FROEB, Judge.

I concur in the result only.

---

8. Set forth at page 113, *supra.*