ATLANTA INTERNATIONAL INSURANCE COMPANY, as successor to and by change of name from Drake Insurance Company of New York, Plaintiff–Appellant,

v.

ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY and Santa Fe Pacific Corporation, formerly known as Santa Fe Southern Pacific Corporation, Defendants–Appellees.

No. 90–1593.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1990.

Decided July 26, 1991.

---

Robert M. Chemers, Scott O. Reed, Pretzel & Stouffer, Chicago, Ill., for plaintiff-appellant.

Michele Odorizzi, Franklin P. Auwarter, William B. Hoff, Jr., Gary A. Isaac, Jonathan J. Olcott, Mayer, Brown & Platt, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Atlanta International Insurance Company's predecessor, Drake Insurance Company, issued a liability policy to the Atchison, Topeka and Santa Fe Railway Company. For the sake of convenience we will refer to the defendants collectively as Santa Fe.

The insurance policy was effective for one year from February 15, 1977, to February 15, 1978, and provided a fourth layer of excess liability coverage on claims arising out of Santa Fe's railroad operations.

On March 10, 1989, Santa Fe was found by a federal jury to have conspired with other railroads in restraint of trade in violation of section one of the Sherman Act, 15 U.S.C. § 1. Amounts that the other co-defendants had paid in settlement were deducted from the trebled damage award and, on May 5, 1989, the United States District Court for the Eastern District of Texas entered judgment against Santa Fe in the amount of $750,100,000, with interest to accrue from the date of judgment. The district court stayed execution of the judgment pending appeal of that case.

On May 1, 1989, Santa Fe sent letters entitled "Notification of Potential Loss" to its nearly 170 general liability insurers. This letter notified the insurers of the verdict against Santa Fe, and noted that there was a prospect of settlement discussions. Santa Fe said that it would keep the insurers informed of the progress of the settlement discussions. Finally, and most importantly for our purposes, the letter stated "[w]e solicit your views and invite your participation according to the terms of the policies."

When Atlanta received the form letter, some apprehension was created, so it brought suit under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. In its action for a declaratory judgment, Atlanta sought to relieve itself from any potential coverage claim by Santa Fe on the grounds that the loss created by the Texas court judgment did not fall within the terms of the coverage provided in the insurance policy issued to Santa Fe by Atlanta's predecessor. Atlanta also alleged that Santa Fe did not provide timely notice of the litigation in the district court in Texas.

Santa Fe moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(1), on the grounds that no "actual controversy" existed—a requirement under 28 U.S.C. § 2201—at the time Atlanta filed its complaint. District Judge George M.

Marovich found that Santa Fe's letter did not constitute a demand for payment and thus there was no actual controversy. He also decided that the late notice issue is only to be decided by the court once the coverage controversy is ripe for determination. As a result the judge dismissed Atlanta's complaint.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, gives courts of the United States discretionary power to issue declaratory judgments. One of the predicates to the exercise of this power is that there be an actual controversy. 28 U.S.C. § 2201. This predicate "tracks the 'cases' or 'controversies' requirement of article III, [and] saves the statute from unconstitutionally expanding the federal courts' jurisdiction." *Harris Trust and Sav. Bank v. E–II Holdings, Inc.*, 926 F.2d 636, 639 (7th Cir.1991) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (upholding Declaratory Judgment Act); U.S. CONST. art. III, § 2).

■ In dismissing the case for lack of subject matter jurisdiction, the district court noted that the mere rendering of a judgment against an insured (Santa Fe) by itself does not create an actual controversy with the insurer (Atlanta). Given this "somewhat novel situation ... where a judgment has been entered against an insured but the insured has not yet requested payment from the insurer," the district court found no cases on point dealing with the federal statute. After noting that the Illinois Declaratory Judgment Act, ILL.REV. STAT. ch. 110, ¶ 57.1 (recodified as ILL.REV. STAT. ch. 110, ¶ 2–701), contains language similar to that of the federal Declaratory Judgment Act, the district court expressed its agreement with the rule espoused by the Illinois Supreme Court in *Gibraltar Ins. Co. v. Varkalis*, 46 Ill.2d 481, 263 N.E.2d 823 (1970).

> [I]n cases where ... all determinative facts giving rise to the potential policy coverage dispute have occurred prior to the initial demand upon the insurance company, no actual controversy arises among the parties until such time as the issuing company is called upon to either pay or defend a claim on behalf of its insured under the terms of the policy in question.

*Id.* 263 N.E.2d at 826.

The Historical and Practice Notes to ¶ 2–701 correctly explain that the Illinois test for an actual controversy is not as rigorous as the test used in the federal courts. However, the district court was not, as Atlanta argues, improperly relying on state law to determine the application of the federal Declaratory Judgment Act. The district court found a persuasive explanation from the Illinois Supreme Court based on a similarly worded statute. There was no error in the district judge's use of *Gibraltar* in aiding his analysis of the effect of the federal statute.

Atlanta alleges that there is no demand requirement under federal law in order to trigger the actual controversy requirement. Atlanta contends that a demand is not necessary where there exists an immediately threatened claim under its policy, directing our attention to *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1353 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988). We stated in *Koch Refining* that "[a] party bringing a declaratory action must show an actual controversy and a direct injury or threat of injury that is 'real and immediate, not conjectural or hypothetical.'" *Id.* (citation omitted). But here, the requisite "injury"—a claim for payment by Santa Fe— neither occurred nor was it immediately threatened by any of Santa Fe's actions.

Santa Fe sent a letter to all general liability insurers, notifying them of a potential judgment against Santa Fe, and four days later the $750 million judgment was entered against it. Atlanta attended an informational meeting hosted by Santa Fe following the distribution of this letter where Santa Fe made clear that there had been no decision reached on which policy year or years were implicated by the Texas judgment.

This fact conveyed to the insurers at this meeting focuses on why there was not an immediate threat of a claim under the policy issued by Atlanta. The action filed

against Santa Fe alleged a conspiracy which spanned a number of years. Based on a statute of limitations decision by the district court in Texas, the jury verdict was predicated on conduct occurring *after* the single year covered by the Atlanta policy. While the plaintiff in the Texas lawsuit cross-appealed on that issue, there remains substantial uncertainty as to whether Santa Fe's liability will be based on occurrences during Atlanta's policy year.

Despite all of Atlanta's arguments, its real dispute is with the district court's characterization of the notification letter. Atlanta states that the letter "can be interpreted only as a clear expression of Santa Fe's belief that the [Texas] judgment was covered under Atlanta's policy." But Atlanta ignores the fact that this was a form letter sent to nearly 170 general liability insurers of Santa Fe who might conceivably have some responsibility for the judgment. There is no definite indication that Atlanta was actually expected to pay anything as a result of the letter. Atlanta knew there had been no determination as to what policy years were affected. This notification from Santa Fe is a far cry from a demand for payment, or even a threat to make a demand for payment. Under the facts presented in this case, there is no actual controversy, and the district court properly dismissed the complaint.

■ As a postscript, we also agree that the late notice issue too fails to create the requisite actual controversy. Any decision rendered by the district court on this issue would be an advisory opinion. It is unknown whether Santa Fe will ever make a policy demand upon Atlanta to pay for losses sustained by it. If there is no attempt by Santa Fe to make Atlanta pay under the policy, there is no notice issue to be resolved. If and when Santa Fe makes a demand for payment or otherwise takes steps that make it sufficiently certain that Atlanta will be called upon to pay under the policy, then there will exist an appropriate setting for determination of this matter.

For the foregoing reasons, the district court's dismissal of the complaint is AF-

FIRMED, and, pursuant to Federal Rule of Civil Procedure 41(b), this dismissal for lack of subject matter jurisdiction is not a dismissal "on the merits."