NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ARTHUR G. ANDERSON, a married man; ELIZA C. ANDERSON, a
married woman; DR. TED WICKSTROM, an unmarried man,
*Plaintiffs/Appellants*,

*v.*

CITY OF PRESCOTT, an Arizona municipality, *Defendant/Appellee*.

No. 1 CA-CV 13-0458

FILED 08-14-2014

Appeal from the Superior Court in Yavapai County
No. P1300CV201201417
The Honorable Kenton D. Jones, Judge

**AFFIRMED**

COUNSEL

Musgrove, Drutz, Kack & Flack, P.C., Prescott
By James B. Musgrove, Mark W. Drutz, Jeffrey D. Gautreaux
*Counsel for Plaintiffs/Appellants*

Prescott City Attorney's Office, Prescott
By Jon M. Paladini
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Peter B. Swann joined.

---

**W I N T H R O P**, Judge:

¶1 Arthur G. Anderson, Eliza C. Anderson, and Ted Wickstrom, M.D., ("Appellants") appeal the superior court's decision dismissing their action against the City of Prescott ("the City") as barred by the statute of limitations. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY[1]**

¶2 Appellants are residents of Prescott, Arizona. The Andersons live on Downer Trail, south of that road's intersection with Sierry Peaks Drive. Wickstrom owns a business on nearby Gail Gardner Way.

¶3 From 1993 to 2006, the City adopted various development agreements and neighborhood plans for the construction of residential subdivisions and public roads in the area. These agreements and plans called for blocking certain public roads until the completion of other connecting streets. As a result, an emergency gate blocked Sierry Peaks Drive just west of its intersection with Downer Trail when the Andersons moved onto their property in 1997. In 2006, the City entered a development agreement contemplating the "relocation of the gate" onto Downer Trail south of its intersection with Sierry Peaks Drive and north of where the Andersons live. The agreement stated the gate would remain in place until the Prescott City Council ("the City Council") approved its removal.

¶4 On May 5, 2007, the City Council approved the Downer Trail Pavement and Utility Construction Project ("the Construction Project"), authorizing the expenditure of public funds for improvements on Downer Trail. In June 2007, the City blocked Downer Trail near its intersection with Sierry Peaks Drive with a gate. In the spring of 2008, the City completed construction on Downer Trail. On October 14, 2008, the City Council

---

[1] The facts are drawn from Appellants' complaint. *See Fidelity Sec. Life Ins. Co. v. State*, 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998).

approved Amendment One to the Construction Project ("Amendment One"), allocating the expenditure of more public funds.

¶5     On August 12, 2008, the City Council voted to leave the gate on Downer Trail. In January 2011 and on May 8, 2012, the City Council voted again to leave the gate on Downer Trail.

¶6     On December 4, 2012, Plaintiffs filed a complaint against the City seeking declaratory and injunctive relief. Among other alleged harms, the complaint stated the gate inconvenienced motorists traveling on Downer Trail, delayed emergency response time to residents south of the gate, and increased traffic on Gail Gardner Way near Wickstrom's business. The complaint alleged the erection of the gate and paving of Downer Trail violated four provisions of the Arizona Constitution.

¶7     Pursuant to Arizona Rule of Civil Procedure 12(b)(6), the City filed a motion to dismiss for failure to state a claim upon which relief can be granted. In part, the City argued Appellants' claims were barred by the one-year statute of limitations imposed by Arizona Revised Statutes ("A.R.S.") section 12-821 (West 2014).[2] The City argued Appellants' claims accrued when the City placed the gate in its current location in 2007 or, in the alternative, when the City Council voted to keep the gate in place in August 2008. Appellants responded that the statute of limitations was inapplicable because: (a) the City Council's vote in 2012 was the accrual of a new cause of action, (b) the presence of the gate on Downer Trail constituted a continuing violation, and (c) Appellants' attempts to remove the gate through a vote of the City Council constituted the exhaustion of administrative remedies, which would toll the statute.

¶8     The superior court concluded the cause of action accrued in August 2008 when the City Council voted to leave the gate in place. The court also concluded the 2011 and 2012 votes did not alter the finality of the August 2008 decision to leave the gate in place. The superior court entered judgment dismissing the complaint as barred by the statute of limitations. Appellants filed a timely notice of appeal. We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9 and A.R.S. § 12-2101(A)(1).

---

[2]     We cite the current Westlaw version of the applicable constitutional provisions, statutes, and rules, because no revisions material to this decision have occurred since the events in question.

**DISCUSSION**

**¶9** Appellants argue the trial court erred by applying the statute of limitations in A.R.S. § 12-821 and granting the City's motion to dismiss pursuant to Arizona Rule of Civil Procedure 12(b)(6). We review a decision granting a motion to dismiss *de novo*. *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 7, 284 P.3d 863, 867 (2012). We accept as true the facts alleged in the complaint and affirm the dismissal only if the plaintiff would not be entitled to relief under any interpretation of the facts susceptible of proof. *Fidelity Sec. Life Ins. Co.*, 191 Ariz. at 224, ¶ 4, 954 P.2d at 582.

**I.** *Applicability of A.R.S. § 12-821*

**¶10** Appellants argue the statute of limitations in A.R.S. § 12-821 cannot apply to state constitutional claims seeking declaratory and injunctive relief. We disagree.

**¶11** In *Flood Control District. of Maricopa County. v. Gaines*, this court upheld the constitutionality of A.R.S. § 12-821 as applied to state constitutional claims "because it regulates rather than abrogates the time within which an action must be filed against a public entity." 202 Ariz. 248, 254, ¶ 18, 43 P.3d 196, 202 (App. 2002) (applying A.R.S. § 12-821 to an inverse condemnation claim). Appellants attempt to distinguish their state constitutional claims seeking declaratory and injunctive relief from the state law claims at issue in *Gaines* and other cases seeking monetary damages. Although Arizona law makes such a distinction for the notice of claim requirement in A.R.S. § 12-821.01, this distinction rests, in part, on the plain language of that statute. *See State v. Mabery Ranch, Co., L.L.C.*, 216 Ariz. 233, 245, ¶ 53, 165 P.3d 211, 223 (App. 2007) (injunctive relief); *Martineau v. Maricopa Cnty.*, 207 Ariz. 332, 335-37, ¶ 18-24, 86 P.3d 912, 915-17 (App. 2004) (declaratory action). By contrast, the statutory language of A.R.S. § 12-821 cannot support such a distinction. Under this statute, "*All actions* against any public entity . . . shall be brought within one year after the cause of action accrues and not afterward." A.R.S. § 12-821 (emphasis added). This court has observed "[t]he word 'all' means exactly what it imports. . . . Standing by itself the word means all and nothing less than all." *Gaines*, 202 Ariz. at 252, ¶ 9, 43 P.3d at 200 (quotation and citation omitted). Accordingly, "All actions" in A.R.S. § 12-821 necessarily includes Appellants' state constitutional claims seeking declaratory and injunctive relief.

**II.** *A.R.S. § 12-821 and Appellants' Claims under the Gift and Taxation Clauses*

**¶12** Appellants argue the City Council vote on May 8, 2012 restarted accrual and resulted in the timely filing of their December 2012 suit, including their claims under the Gift and Taxation Clauses.[3] For the purposes of the statute of limitations in A.R.S. § 12-821, "a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B); *see Dube v. Likins*, 216 Ariz. 406, 421, ¶ 7, 167 P.3d 93, 108 (App. 2007) (applying definition of accrual in A.R.S. § 12-821.01(B) to statute of limitations in A.R.S. § 12-821).

**¶13** Arizona case law acknowledges "the question of whether and when statutes of limitations are applicable to declaratory relief actions is a less than clear area of the law." *W. Cas. & Sur. Co. v. Evans*, 130 Ariz. 333, 335, 636 P.2d 111, 113 (App. 1981). A statute of limitations does not begin to run against an action for declaratory judgment until "some event in the nature of a breach of contract" or "actual injury" occurs. *Canyon del Rio Investors, L.L.C. v. City of Flagstaff*, 227 Ariz. 336, 341, ¶ 19, 258 P.3d 154, 159 (App. 2011) (quotation marks and citation omitted). To determine the applicability of a statute of limitations in the context of a declaratory action, we must "examin[e] the substance of that action to identify the relationship out of which the claim arises and the relief sought." *Vales v. Kings Hill Condo. Ass'n*, 211 Ariz. 561, 566, ¶ 17, 125 P.3d 381, 386 (App. 2005), *abrogated on other grounds by Powell v. Washburn*, 211 Ariz. 553, 125 P.3d 373 (2006).

*A. Accrual of Claims under A.R.S. § 12-821.01(B)*

**¶14** Appellants claim the City's expenditure of public funds for the Construction Project and Amendment One violates the Gift and Taxation Clauses of the Arizona Constitution because that expenditure did not promote a public purpose. Under the relevant provisions of the Gift Clause, no "city . . . shall ever give or loan its credit in the aid of, or make

---

[3] In this case, we consider Appellants' claims under these clauses together because Appellants predicate their complaint on the public purpose requirement common to each clause. *See Turken v. Gordon*, 223 Ariz. 342, 346, ¶ 11-12, 224 P.3d 158, 162 (2010) (describing commonalities between Gift and Taxation Clauses).

any donation or grant, by subsidy or otherwise, to any individual." Ariz. Const. art. 9, § 7. To state a claim under this clause, a plaintiff must demonstrate a city's expenditure of public funds has no public purpose. *See Wistuber v. Paradise Valley Unified Sch. Dist.*, 141 Ariz. 346, 349, 687 P.2d 354, 357 (1984).[4] As a result of this element and the definition of accrual in A.R.S. § 12-821.01(B), a cause of action under the Gift Clause accrues when the damaged party realizes an injury and knows or reasonably should know a city has expended public funds for a nonpublic purpose.

¶15 Pursuant to the relevant provisions of the Taxation Clause, "all taxes . . . shall be levied and collected for public purposes only." Ariz. Const. art. 9, § 1. To determine whether a city's expenditure of public funds is for a public purpose, the court will refer to "the object sought to be accomplished" and "the degree and manner in which that object affects the public welfare." *City of Glendale v. White*, 67 Ariz. 231, 237, 194 P.2d 435, 439 (1948) (citation omitted). Like accrual under the Gift Clause, a cause of action under the Taxation Clause accrues when a damaged party realizes an injury and knows or reasonably should know a city has expended public funds for a nonpublic purpose.

¶16 In this case, Appellants challenge the combined expenditure of funds for the Construction Project and Amendment One. We reject Appellants' argument that the May 2012 City Council vote declining to remove the gate "restarted the clock" on accrual for these claims, because the only vote after the erection of the gate in June 2007 that authorized the further expenditure of public funds was the vote in 2008 for Amendment One. We also reject the City's argument that accrual occurred with the placement of the gate on Downer Trail in June 2007, because that initial placement predated the expenditure of funds for Amendment One, an essential factual predicate to Appellants' claims under the Gift and Taxation Clauses. Instead, Appellants realized an injury and knew or reasonably should have known the City had expended public funds for an allegedly nonpublic purpose, at the latest, when the City completed construction pursuant to Amendment One. We mark accrual, at the latest, from the completion of Amendment One rather than its approval by City Council because Appellants did not necessarily "know" the city expended public funds solely from the City Council meeting. *Cf. Long v. City of Glendale*, 208 Ariz. 319, 325, ¶ 10, 93 P.3d 519, 525 (App. 2004) ("The requirement that a

---

4 The "inequitable or unreasonable consideration" prong is inapplicable to Appellants' claims in this case because Appellants are not attacking a city contract. *See Wistuber*, 141 Ariz. at 349, 687 P.2d at 357.

claimant 'realize' he has been damaged is inconsistent with the idea that claimants can be deemed to have notice of a claim as a matter of law [from the records of a public meeting] regardless of their actual knowledge of the claim."). Appellants' complaint, however, fails to specify when the City expended funds or completed construction pursuant to Amendment One; we therefore conclude Appellants' claims under the Gift and Taxation Clauses accrued, at the latest, on October 14, 2008 when the City Council approved the expenditure of funds for Amendment One.

### B. *The Continuing Violations Doctrine*

¶17 Appellants next argue "[t]he gate represents a continuing violation that accrues a new cause of action each day," precluding application of the statute of limitations to their claims. The continuing violations doctrine saves a claim from the statute of limitations in cases where a plaintiff alleges an on-going violation of rights through one of two theories: (1) an aggregation of distinct bad acts, at least one of which falls within the limitations period, *see, e.g.*, *O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001) (quotation marks and citation omitted) (Title VII violation); or (2) a disaggregation of a single bad act perpetuated by the defendant, allowing the plaintiff to recover for harm caused during the limitations period even if claim accrual would otherwise start from the initial action, *see, e.g.*, *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) (constitutional violation). *See also White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1430 (11th Cir. 1997) (discussing "modified" and "pure" continuing tort theories); Kyle Graham, *The Continuing Violations Doctrine*, 43 Gonz. L. Rev. 271, 279-283 (2008) (describing two types of continuing violations theories). Under the second theory, a court must differentiate between an on-going violation and a single violation's "lingering effects." *Pitts v. City of Kankakee, Ill.*, 267 F.3d 592, 595-596 (7th Cir. 2001); *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) ("[A] mere continuing *impact* from past violations is not actionable." (quotation marks and citations omitted)).

¶18 Appellants appear to rely on the second type of continuing violations theory by arguing the presence of the gate is a continuing violation. Appellants cite *California v. Kinder Morgan Energy Partners, L.P.*, 569 F. Supp. 2d 1073, 1085 (S.D. Cal. 2008), to argue the continued presence of the gate is analogous to a continuing nuisance. In *Kinder Morgan*, the defendants operated an industrial site for the storage and transportation of petroleum products. *Id.* at 1079. Evaluating whether the statute of limitations barred a nuisance claim, the court relied on the difference between "permanent" and "continuing" nuisances where "the crucial test

for a continuing nuisance is whether an offensive condition can be discontinued or abated at any time," concluding "Plaintiffs' allegations that Defendants' actions are abatable at any time are crucial." *Id.* at 1085-86. Appellants' also cite *Kuhnle*, 103 F.3d at 522, in support of their continuing violations argument. In *Kuhnle*, the plaintiff challenged a county's resolution barring through-truck traffic on certain roads as a violation of an asserted "constitutional right to intrastate travel." *Id.* at 518, 521-22. The court concluded the resolution and its enforcement deprived the plaintiff of an asserted right every day it remained in effect. *Id.* 522.

¶19 By focusing on the continued existence of the gate, however, Appellants confuse the proper comparator between the alleged violation under the Gift and Taxation Clauses and the alleged violations in *Kinder Morgan* and *Kuhnle*. A violation of the Gift Clause occurs when a city makes a "donation or grant, by subsidy or otherwise" for a nonpublic purpose. *See* Ariz. Const. art. 9, § 7. Similarly, a violation of the Taxation Clause occurs when a city expends public funds for a nonpublic purpose. *See* Ariz. Const. art. 9, § 1. As a result, the continued existence of an object paid for using public funds is a mere continuing impact of the initial violation under the Gift and Taxation Clauses. *Cf. Wistuber*, 141 Ariz. at 348, 687 P.2d at 356 ("By its agreement with the Association, the District released the Association president from teaching duties but *continued* to pay a portion of the president's salary" (emphasis added)). In this case, therefore, Appellants' claims under the Gift and Taxation Clauses are predicated on the expenditure of funds for a nonpublic purpose, not the gate that results from that expenditure. Further, unlike the continuing nuisance in *Kinder Morgan*, the alleged violation in this case cannot be abated. And although the on-going presence of the gate mimics the on-going enforcement of the county resolution in *Kuhnle*, the violation in this case was complete when the City expended funds to complete construction.

¶20 Thus, despite the continued presence of the gate on Downer Trail, Appellants have not alleged a continuing and therefore actionable violation of the Gift and Taxation Clauses.[5] Because Appellants' claims under the Gift and Taxation Clauses accrued in October 2008 and the violations are not continuing in nature, A.R.S. § 12-821 time-bars Appellants' December 2012 claims.

---

[5] The first theory of continuing violations is equally unavailing because the 2011 and 2012 votes of the City Council did not involve the allocation of public funds, so these actions cannot constitute "bad acts" for the purposes of the continuing violations doctrine.

C. *Appellants' Estoppel by Inducement and Administrative Exhaustion Arguments*

**¶21** We reject Appellants' argument that the City's conduct precludes it from arguing a statute of limitations defense under a theory of estoppel by inducement. To be entitled to protection from the statute of limitations on this theory, a plaintiff must (1) "identify specific promises, threats or inducements by the defendant that prevented the plaintiff from filing suit," (2) show "defendant's promises, threats or representations actually induced the plaintiff to forbear filing suit," (3) show "defendant's conduct *reasonably* caused the plaintiff to forbear filing a timely action," and (4) "file suit within a reasonable time after termination of the conduct warranting estoppel." *Nolde v. Frankie*, 192 Ariz. 276, 280 ¶¶ 16-19, 964 P.2d 477, 481 (1998).

**¶22** Appellants argue the City Council's 2011 and 2012 votes regarding the gate caused them to forbear filing suit because they believed the dispute could be remedied through the political process. Even assuming the 2011 and 2012 votes would satisfy the first prong of the *Nolde* test, those votes could not reasonably have caused Appellants to refrain from filing suit within the limitations period, because the cause of action extinguished one year after the October 2008 accrual, long before the subject votes occurred.

**¶23** Appellants also argue their pursuit of a "political solution" before the City Council is analogous to a plaintiff who must seek the exhaustion of administrative remedies prior to filing suit. *See Minor v. Cochise Cnty.*, 125 Ariz. 170, 172, 608 P.2d 309, 311 (1980) ("It is a well recognized principle of law that a party must exhaust his administrative remedies before appealing to the courts."). We reject this argument because Appellants point to no case law making such an analogy between the availability of elective local political processes and mandatory administrative proceedings. Appellants also fail to demonstrate how the facts in this case relate to the purpose of the exhaustion of remedies doctrine. *See Parisi v. Davidson*, 405 U.S. 34, 37 (1972) ("The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies.").

**¶24** Finally, Appellants argue "fairness" dictates the inapplicability of the statute of limitations to their claims. We reject this argument because Appellants cite no case in which an Arizona court

adopted this theory, and they fail to develop an argument regarding how a court would apply such a theory.

**III.** ***Insufficiency of Appellants' Pleadings under the Equal Privileges and Immunities Clause and the Special Laws Clause***

**¶25** When evaluating the City's motion to dismiss for failure to state a claim, "well-pleaded material allegations of the complaint are taken as admitted." *See Aldabbagh v. Ariz. Dep't of Liquor Licenses & Control*, 162 Ariz. 415, 417, 783 P.2d 1207, 1209 (App. 1989). We do not accept as true, however, "inferences or deductions that are not necessarily implied by well-pleaded facts" or "unreasonable inferences or unsupported conclusions from such facts." *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4, 121 P.3d 1256, 1259 (App. 2005) (citation omitted). Although the superior court granted dismissal pursuant to the statute of limitations argument, we may affirm if the dismissal is correct for any reason. *See Espil Sheep Co. v. Black Bill & Doney Parks Water Users Ass'n*, 16 Ariz. App. 201, 203, 492 P.2d 450, 452 (1972).

        *A.*     *Appellants' Claims under the Equal Privileges and Immunities Clause*

**¶26** In their complaint, Appellants claim the erection of the gate and the paving of Downer Trail violate the Equal Privileges and Immunities Clause of the Arizona Constitution. Under the Equal Privileges and Immunities Clause, "No law shall be enacted granting to any citizen [or] class of citizens . . . privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Ariz. Const. art. 2, § 13. The clause prohibits public entities from unconstitutionally discriminating against a person or class. *See Ariz. Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 557, 637 P.2d 1053, 1060 (1981). Arizona case law has construed the contours of this clause along the same lines as the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *See Big D Const. Corp. v. Court of Appeals for State of Ariz., Div. One*, 163 Ariz. 560, 565-66, 789 P.2d 1061, 1066-67 (1990); *Valley Nat. Bank of Phoenix v. Glover*, 62 Ariz. 538, 554, 159 P.2d 292, 299 (1945).

**¶27** To present a prima facie case of discrimination, plaintiffs must allege an unlawful classification by government action. *See Aegis of Ariz., L.L.C. v. Town of Marana*, 206 Ariz. 557, 570-71, ¶ 54, 81 P.3d 1016, 1029-30 (App. 2003); *see also United States v. Horton*, 601 F.2d 319, 323-324 (7th Cir.), *cert. denied*, 444 U.S. 937 (1979) ("[A]ny equal protection argument[] requires the existence of at least two classifications of persons which are treated

differently under the law."). Although that classification need not be discriminatory on its face, plaintiffs must allege a discriminatory purpose or intent behind the classification. *Cf. Washington v. Davis*, 426 U.S. 229, 239 (1976) ("[O]ur cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact."). Even without direct evidence of a discriminatory motive, "an invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *Id.* at 242.

¶28 In this case, Appellants allege the gate creates a "private enclave" benefiting and injuring certain residents. In effect, Appellants claim the City classified residents based on their location on Downer Trail north or south of Sierry Peaks Drive. The facts in the complaint, however, do not establish how the presence of a single gate across a public road leads to the necessary inference that the City classified residents to create the alleged "private enclave" and the benefits and injuries that flow from that classification.

¶29 Examining the well-plead facts alleged in the complaint, we cannot accept as true the inference that the City classified residents to create a "private enclave." In their complaint, Appellants state, "The Andersons, who live south of the gate, cannot reach neighboring houses to the north by vehicle unless they drive approximately 2.5 miles [out of the way]. *The situation is the same for residents who live north of the gate* and wish to reach other residents who live south of the gate." (Emphasis added). Appellants also state "the overwhelming majority [of taxpayers] cannot use" Downer Trail south of the gate and the road "is not *immediately* accessible to all taxpayers." (Emphasis added). And Appellants state the gate "increases the amount of traffic on Gail Gardner Way" and "delays emergency response time and the arrival of first responders" to residents living south of the gate. Taken together, these facts—the only facts in the complaint discussing the effects of the gate[6]—do not lead to the legally-required inference that the City classified residents based on their location.

---

[6] The other effects discussed in the complaint, Appellants' claims that the City created a "private enclave" where certain residents living south of the gate receive "the privilege of a paved road" and "an immunity from traffic" not available to all residents, are not facts but unsupported conclusions.

¶30        Further, Appellants have not plead several facts necessary to sustain a claim alleging the violation of the Equal Privileges and Immunities Clause. For example, Appellants do not state that the City Council created a facial classification of residents with its authorization of the Construction Project and Amendment One. Nor do Appellants allege any facts identifying or demonstrating a discriminatory purpose behind the City's actions. As a result, Appellants merely describe the adoption of the 2006 development agreement, the City Council's approval of the Construction Project and Amendment One, and the votes to leave the gate in place without alleging any facts demonstrating the City classified its residents based on location.

¶31        We conclude Appellants have not stated a claim because they have not factually demonstrated by reasonable inference or otherwise a classification by the City that triggers a claim under the Equal Privilege and Immunities Clause. We therefore affirm the decision of the superior court.

    B.      *Appellants' Claims under the Special Laws Clause*

¶32        Appellants also claim the City violated the Special Laws Clause by discriminating in favor of some residents through the creation of a "private enclave." While the Equal Privileges and Immunities Clause prohibits discrimination *against* a person or class, the Special Laws Clause prohibits discrimination *in favor* of a person or class. *See Ariz. Downs*, 130 Ariz. at 557, 637 P.2d at 1060. Under the provisions of the Special Laws Clause relevant to this case, "No local or special laws shall be enacted [when]: . . . [l]aying out, opening, altering, or vacating roads, plats, streets, alleys, and public squares[;] . . . [g]ranting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises[;] [or] . . . a general law can be made applicable." Ariz. Const. art. 9, pt. 2, § 19(8), (13), (20). "Legislation does not violate the special law prohibition if (1) the classification is rationally related to a legitimate governmental objective, (2) the classification is legitimate, encompassing all members of the relevant class, and (3) the class is elastic, allowing members to move in and out of it." *Long v. Napolitano*, 203 Ariz. 247, 253, ¶ 14, 53 P.3d 172, 178 (App. 2002) (citing *Republic Inv. Fund I v. Town of Surprise,* 166 Ariz. 143, 149, 800 P.2d 1251, 1257 (1990)).

¶33        Assuming without deciding Appellants have satisfied the pleading requirement with regard to the first two prongs of the *Long* test, we conclude Appellants have not plead any facts to establish the class is not elastic. In their complaint, Appellants' lone allegation as to elasticity states: "the class is not elastic because these taxpayers cannot move in and out of

the class because they can only enter the class by purchasing real estate, which is a finite resource." This unsupported conclusion does not demonstrate the inelasticity of the class of property owners on Downer Trail, because it fails to identify what government action prohibits residents from alienating their property. Because Appellants have not stated any facts that demonstrate the inelasticity of the alleged class, we affirm the decision of the superior court dismissing Appellants' claim under the Special Laws Clause.

## CONCLUSION

¶34 We conclude the statute of limitations applies to Appellants' claims under the Gift and Taxation Clauses and that such claims accrued, at the latest, in October 2008. The presence of the gate did not constitute a continuing violation, and inducement by estoppel does not apply. We also conclude Appellants' complaint failed to state a claim for which relief could be granted under the Equal Privileges and Immunities Clause and Special Laws Clause. The superior court decision dismissing the action is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: gsh