541 P.2d 585
**Charles J. ELKINS, Appellant,**
**v.**
**Donna J. VANA, Appellee.**
**No. 2 CA–CIV 1833.**

Court of Appeals of Arizona,
Division 2.
Oct. 28, 1975.
Rehearing Denied Nov. 26, 1975.
Review Denied Dec. 16, 1975.

J. Emery Barker, Tucson, for appellant.

Wolfe & Harris, P. A. by Sidney B. Wolfe, Phoenix, for appellee.

OPINION

HOWARD, Chief Judge.

Appellee sued appellant in the court below for a declaratory judgment. The subject matter of this lawsuit is six promissory notes. The issues below were whether there had been a valid inter vivos gift of the promissory notes and whether the underlying debts which they evidenced had been satisfied. The trial court found in favor of appellee and this appeal ensued.

The reporter's transcript for the first three days of this trial was lost and we have in its stead a statement of the evidence approved by the superior court pursuant to Rule 75(k) of the Arizona Rules of Civil Procedure, 16 A.R.S.

The parties are the same as those in the case of *Vana v. Elkins,* 20 Ariz.App. 557, 514 P.2d 510 (1973). However, the notes involved in this case are not the same.

Appellee is the daughter by a previous marriage of Elsie E. Elkins, the deceased wife of appellant. Appellant is the maker on all of the promissory notes which are payable to the order of Elsie E. Elkins and by their terms are not due until appellant's death. The notes all bear interest and under the will of Elsie Elkins appellant is the income beneficiary of the estate during his lifetime.

In 1969 all the notes were endorsed by the deceased and one of these notes carried the following additional statement in the handwriting of the deceased: "After my death these notes are the property of Miss Donna Joan Vana or if she marries, her marriage name."

The trial court made findings of fact and conclusions of law and found, inter alia, that a valid inter vivos gift had been made prior to the endorsement of the notes in 1969 and that the qualified endorsement on the notes had no force and effect. It further found that the notes had not been satisfied as claimed by appellant and were due and payable as expressed on the face thereof; and that appellee was not entitled

to a money judgment since the notes were not yet mature.[1]

Appellant claims there was insufficient evidence to prove a valid gift inter vivos and that the trial court exceeded its jurisdiction in its declaratory judgment.

■ Preliminary to deciding the issues in this case we must consider appellee's contention that lack of a transcript for the first three days of trial precludes appellate review.

Rule 75(k), Arizona Rules of Civil Procedure provides:

"If a stenographic report of the evidence or proceedings at a hearing or trial cannot be obtained by reason of the death, disability or inefficiency of the reporter taking the evidence or proceedings, or the loss or destruction of the notes thereof, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection, for use *instead of a stenographic transcript*. The statement shall be served on the appellee who may serve objections or propose amendments thereto within ten days after the service upon him. Thereupon the statement, with the objections or proposed amendments, shall be submitted to the superior court for settlement and approval and as settled and approved shall be included by the clerk of the court in the record on appeal." (Emphasis added)

A statement of the evidence was prepared by appellant and served upon appellee. Appellee did not propose any amendments to the statement but instead attacked the procedure in the trial court on the basis that, "To resolve a case such as this one where the case turned on the oral testimony and documentary evidence, an attempt to decide the case upon a stipulated statement of evidence is an impossible situation and inadequate."

The trial court, by minute entry, stated:

"The Court therefore settles and approves Appellant's Statement of Evidence as submitted insofar as it does not disagree with the findings of fact and conclusions of law set out in the Minute Entry order dated July 3, 1974, and the conclusions of the Court as expressed in its Minute Entry order dated October 1, 1974, . . ."

This minute entry, signed by the judge, was followed by an order also signed by the judge which stated that appellant's statement of the evidence "is, settled and approved by this court as submitted by the Appellant, Charles J. Elkins, to be included by the Clerk of this Court in the Record on Appeal in the above captioned matter."

Rule 75(k) of the Arizona Rules of Civil Procedure provides for the use of a statement of the evidence instead of a stenographic transcript. The rule contemplates that the court shall settle and approve it. The minute entry order wherein the court attempts to approve it "insofar as it does not disagree with the findings of fact and conclusions of law set out in the Minute Entry order dated July 3, 1974, and the conclusions of the Court as expressed in its Minute Entry order dated October 1, 1974" does not settle anything. This however, is cured by the subsequent written order of the court wherein it unqualifiedly approved appellant's statement of the evidence.

Rule 75(k) clearly sets forth that this statement is part of the record and is to be used instead of a stenographic transcript and for that reason appellee's contention is without merit.

■ What is necessary to make a valid inter vivos gift of a negotiable instrument? The essential elements of a gift inter vivos are that the donor manifest a clear intent to give to the party claiming as donee, and give to the latter before death, full possession and control of the

---

1. The estate of Elsie E. Elkins moved to intervene in the proceedings below but said motion was dismissed and the estate has not appealed.

property. *O'Hair v. O'Hair,* 109 Ariz. 236, 508 P.2d 66 (1973). Furthermore, gifts inter vivos of unendorsed negotiable notes of a third person may be made by simple delivery of the notes, the equitable interest therein vesting in the donee by delivery and acceptance. *Brashears' Adm'r. et al v. Oder,* 291 Ky. 817, 165 S.W.2d 801 (1942); *Rothwell v. Taylor,* 303 Ill. 226, 135 N.E. 419 (1922); 38 C.J.S. Gifts § 54, p. 840. As far as the burden of proof is concerned, in Arizona it has been established that less evidence is required to establish a gift from a parent to a child than from a stranger to a stranger. *Armer v. Armer,* 105 Ariz. 284, 463 P.2d 818 (1970).

Turning our attention to the facts in the case at hand we find that on June 29, 1963, the deceased wrote a letter to her daughter which stated among other things:

"About the notes. The notes are made out to me and at his death the money will come out of the estate before anything. If I should die first, then you have the notes and you can show them to the executors and the money will come out of the estate first before it is divided. Our will says it will be divided in five. I am not worrying about the notes at all. They are good. *In case of Charles death first then you can give them to me and things will come out right.* I already consulted a lawyer about that. *Your holding them only means that in case of my death, then no one can come and take them and tear them up. It doesn't mean that the money will be yours at all. It only means that it will come out of the estate before any of it is paid out.*" (Emphasis added)

Appellee testified that her mother gave her the promissory notes in June of 1963. Also admitted into evidence was appellee's affidavit stating that the notes were given to her in 1967 as a gift from her mother Elsie E. Elkins, who personally handed them to her; that she gave them to her as an irrevocable gift and that appellee promised her mother that she would not seek to enforce the notes until after her death in order to avoid strife between her mother and Mr. Elkins.

Appellee also stated that in 1969 she went to her mother's home and had the notes endorsed because she was concerned over the difficulty she might later encounter in collecting the notes in the event of her mother's death.

Frieda Stoll, a friend of the deceased for thirty-two years testified that she had a number of conversations with the deceased concerning the existence of certain promissory notes the deceased had received from Charles Elkins in exchange for past loans. She further testified that in 1967 she knew the deceased had possession of the promissory notes from Charles J. Elkins and that they were kept by the deceased in her dresser drawer under some handkerchiefs. She also stated that she advised the deceased to give the notes to appellee for safekeeping and that at a later time the deceased confided in her that she had made a gift of the notes to appellee so that appellee could recover on them after her death.

Marie Hlava, a close friend of the deceased for thirty years, had known her in Illinois and had corresponded with her after the deceased moved to Arizona. She testified that the deceased had written her about the existence of the promissory notes and on a couple of occasions expressed some concern over the notes. She further testified that the first time she came to Arizona she was met by the deceased and was a guest at her home for two weeks. While enroute from the airport to the Elkins' home, Elsie told her she had given the notes to her daughter and hoped that her daughter would realize from them after her death.

It is evident from the trial court's findings that it thought that a completed gift had been made prior to their endorsement in 1969. The findings do not indicate a date on which the gift was made but only that it was made sometime prior to 1969.

The affidavits of appellee and Frieda Stoll that the notes were given to appellee in 1967 are contradicted by the letter written by the deceased on June 29, 1963. From that letter it appears that the notes were given to appellee in 1963 and she so testified. There was no testimony that at any time after 1963 appellee returned the notes to the deceased. Furthermore, the endorsement on the note in 1969 is directly contradictory to appellee's contention.

While we will not disturb the trial court's findings of fact unless they are clearly erroneous, we are not bound by findings which are mixed law and fact. The only findings which directly bear on this issue are as follows:

"2. That the notes in question, the promissory notes, were the irrevocable gift by the deceased to the Plaintiff several years prior to their endorsement by the deceased (as shown by the evidence) and that the later endorsement thereof was in the handwriting of the deceased and with the intention on the part of the deceased to endorse the same;

3. That deceased could not legally qualify her endorsement at the time same was done to make the original gift an illegal 'will' not with the writing phrased on the notes together with the endorsement."

Finding No. 3 is a conclusion of law and the first clause of finding No. 2 is one of mixed law and fact. We are therefore not bound by them.

The documentary evidence is clearly against appellee. At best the evidence in this case is equiponderant. We hold that appellee failed to sustain her burden of proving an inter vivos gift.

In essence, appellee, in her request for a declaratory judgment, asked the trial court to declare that the notes were valid and subsisting instruments. This action was prompted by a letter from appellant's attorney to appellee's attorney which stated that appellant did not recognize the validity of the notes and payment would not be made.

It was appellant's contention below that the notes had been paid in part and that they were further satisfied by the execution of joint and mutual wills by him and the deceased.

The court declared:

"6. That the notes were not satisfied by the execution of the joint and mutual wills of the deceased and the Defendant made at a time after the gift and subsequent endorsement of the notes by deceased for the reason that the deceased had no further interest in the notes at the time of making said will.

7. That the notes were due and payable as expressed on the face thereof respectively and have not in any way been paid or otherwise nullified."

Appellant claims he advanced these defenses solely because he was required to do so by the trial court and that the trial court lacked jurisdiction to try these issues in a declaratory judgment action since the notes had not yet matured. We do not agree.

One purpose of actions for declaratory judgment is to provide a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy. *Peoples Bank v. Eccles,* 64 F. Supp. 811 (D.D.C.1946); *Rego Industries, Inc. v. American Modern Metals Corp.,* 91 N.J.Super. 447, 221 A.2d 35 (1966). An action for a declaratory judgment is intended to serve as an instrument of preventive justice, to relieve litigants of the common law rule that no declaration of right may be judicially adjudged until that right has been violated, and to permit adjudication of rights or status without the necessity of a prior breach. *Rego Industries, Inc. v. American Modern Metals Corp.,* supra. Furthermore, the Declaratory Judgment Act was intended to be remedial in nature and liberally construed. *Peterson v. Central Arizona Light & Power Co.,* 56 Ariz. 231, 107 P.2d 205 (1940);

*Planned Parenthood Center of Tucson, Inc. v. Marks,* 17 Ariz.App. 308, 497 P.2d 534 (1972).

Appellant also claims that under A.R.S. Sec. 12–1832, the court can only determine the construction or validity of the notes and that it cannot pass on his defense of satisfaction. This claim is without merit in view of A.R.S. Sec. 12–1835 which states:

> "The enumeration in §§ 12–1832, 12–1833 and 12–1834 does not limit or restrict the exercise of the general powers conferred in § 12–1831, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty."

Since these notes are an asset of the deceased's estate, and since appellee is a devisee of one half of the estate, appellee had an interest which entitled her to be a party to the proceeding. A.R.S. Sec. 12–1841. The estate also should have been permitted to intervene as an interested party. Rule 24, Arizona Rules of Civil Procedure, 16 A.R.S.

Paragraph No. 6 of the trial court's declaratory judgment is confusing since it seems to state that the joint and mutual wills were executed *subsequent* to the endorsements on the notes. This is contrary to the evidence which shows that the wills were executed on August 14, 1968, prior to the endorsements which occurred in 1969. The record does support the declaration of the court in paragraph 7, hereinbefore set forth, that the notes were due and payable as expressed on the face thereof and have not been paid or otherwise nullified and does support a declaration that the notes were not nullified by the execution of the joint and mutual wills.

The judgment is reversed and the case is remanded to the trial court with directions to enter a declaratory judgment consistent with this opinion.

KRUCKER and HATHAWAY, JJ., concur.