258 P.3d 154

**CANYON DEL RIO INVESTORS, L.L.C., an Arizona limited liability company, Plaintiff/Appellant,**

v.

**CITY OF FLAGSTAFF, a municipal corporation, Defendant/Appellee.**

**No. 1 CA–CV 10–0013.**

Court of Appeals of Arizona, Division 1, Department E.

May 24, 2011.

Burch & Cracchiolo, P.A. By Daryl Manhart, Edwin Fleming, Jessica Conaway, Phoenix, Attorneys for Plaintiff/Appellant.

Mariscal, Weeks, McIntyre & Friendlander, P.A. By Michael S. Rubin, Nicole S. Felker, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

SWANN, Judge.

¶1 Canyon del Rio Investors, L.L.C. ("CDR"), brought claims against the City of Flagstaff for declaratory judgment and damages in connection with a zoning dispute. The superior court ruled that the claims were barred by the statute of limitations. We hold: (1) damage claims arising out of municipal zoning decisions do not ripen—and the statute of limitations does not begin to run—until the plaintiff exhausts its administrative remedies; and (2) though declaratory judgment claims may be brought before related damage claims become ripe, no statute of limitations begins to run against such claims until administrative remedies have been exhausted. We further hold that while a plaintiff is not required to exhaust its administrative remedies before bringing an action under 42 U.S.C. § 1983, an as-applied challenge to a zoning decision must be predicated on a final decision by the relevant government body.

### FACTS AND PROCEDURAL HISTORY

¶2 In May 1984, the Arizona State Land Department ("ASLD") developed a land use plan (the "1984 Plan") for 331 acres of state land located within the City, proposing a "mixed use planned community" that included parcels for residential, commercial, and other uses and specified zoning categories for each parcel. At that time, the Revised Flagstaff Zoning Code of 1970 was in effect, and, pursuant to a 1973 amendment, allowed single-family dwellings on land zoned RM–M.

¶ 3 In 1991, the City adopted the 1991 Land Development Code (the "1991 Code"), which rezoned any undeveloped areas within the planned community to "comparable new zoning districts as shown on the Official Zoning Map."

¶ 4 In 2002, CDR purchased 314 acres (the "Property") and agreed to sell certain parcels to various third parties. CDR developed an Initial Platting Proposal covering both residential and commercial portions of the Property and submitted that proposal to the City. The City, however, required CDR to make onsite and offsite improvements it claimed were required by "Ordinance 1925."

¶ 5 In February 2004, CDR met with the City and advised it that the required improvements had rendered its proposed plat plan "economically unfeasible." CDR withdrew the proposal and advised its third-party purchasers to submit separate applications for residential parcels, while CDR created a development plan for the commercial parcels.

¶ 6 In April 2004, CDR and Cachet, a third-party purchaser, met with the City to review CDR's commercial development plan and Cachet's residential plan. The City advised CDR that its new plan "would not be considered or approved" because it required that the Property be rezoned. The City told Cachet that its residential plan "would not be considered favorably" at an upcoming Development Review Board (DRB) hearing because the plan did not comply with City Ordinance 1925 and did not concurrently plan for residential and industrial parcels. After the DRB hearing, the City "referred back" the Cachet plan because it did "not meet the requirements of the [1984 Plan] or City's Subdivision requirements." CDR never demanded, however, that the DRB issue a final decision on its proposed plan.

¶ 7 In May 2004, CDR sent the City a Notice of Claim pursuant to A.R.S. § 12–821.01, which alleged that the City's application of Ordinance 1925 rendered development of the Property "unfeasible." The Notice of Claim asserted that the City's application of the ordinance and the concurrence requirement was illegal and alleged damages of more than $30 million. But CDR did not sue.

¶ 8 In April 2007, CDR again met with city staff to review a new development master plan ("2007 Plan") that included single-family housing on one parcel. City staff, however, stated that single-family homes were not permitted on the parcel pursuant to the 1991 Code. CDR believed that the 1991 rezoning did not conform to the 1984 Plan, but the City believed otherwise and stated it would review CDR's 2007 Plan by interpreting the 1991 Code "in connection with" the 1984 Plan. The City offered to review CDR's plan in this light and identify "any perceived conflicts" between the 1991 Code and CDR's 2007 Plan "on an item by item basis as part of the development review process." If CDR disagreed with that approach, however, the City would "reject" CDR's plan, which it had "on hold," because it "ignores the current zoning regulations."

¶ 9 In May, the City "refused to accept" CDR's application for concept review because it contemplated single-family housing on a disputed parcel. In a July 2007 letter to the City, CDR demanded that the City accept both its application for concept review that it intended to re-submit, as well as any future plans that were consistent with the 1984 Plan. CDR also asserted that the 1991 zoning was invalid as to the Property, that the City's attempts to impose it on CDR violated its due process rights, and that the 1991 Code would materially alter the 1984 Plan. CDR contemplated a "mandamus action" if the City did not approve its plan, and offered to settle its claims against the City for $26,000,000.

¶ 10 In March 2008, CDR proposed that the City enter into a development agreement to resolve the dispute. CDR also asserted for the first time that the City had misrepresented the zoning for the disputed parcel, based on an ordinance that CDR had recently discovered. CDR threatened to file a lawsuit to "recover the substantial, accruing damages caused by the City's actions" if the proposed agreement was not approved by the City Council by April 1, 2008. As in 2004, CDR did not request a final decision by DRB and therefore pursued no administrative appeals.

¶ 11 On April 7, 2008, CDR commenced a civil action against the City. The Complaint advanced six claims for relief, three of which sought declaratory judgment concerning the City's application of its various plans and ordinances and the constitutionality of Ordinance 1925. The remaining claims sought damages for misrepresentation and alleged violations of CDR's due process rights.

¶ 12 The City moved to dismiss the complaint on the grounds that (1) it had not been brought within one year of the accrual of the cause of action, (2) CDR failed to allege compliance with Arizona's notice of claim statute, (3) CDR lacked standing to challenge the validity of the zoning code under statutes governing the development of state land, (4) CDR failed to exhaust its administrative remedies, and (5) CDR failed to join the Arizona State Land Commissioner as an indispensable party. CDR responded that its action challenged only the City's rejection of its May 2007 application, making its complaint timely filed.

¶ 13 The trial court dismissed the complaint, ruling CDR's claims were barred by a one-year statute of limitations pursuant to A.R.S. § 12–821. It also noted that CDR's complaint had not alleged compliance with the notice of claim statute, A.R.S. § 12–820.01, and that one of its claims for declaratory judgment regarding the applicable zoning code would necessarily involve the Arizona State Land Commissioner, who was not joined in the complaint.

¶ 14 CDR timely appeals. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

### DISCUSSION

#### Standard of Review

■ ¶ 15 When the City filed its motion to dismiss, it attached copies of documents regarding the zoning of the Property and CDR's May 2004 notice of claim. CDR's response incorporated its correspondence with the City and certain zoning documents.

These attachments, which were not stricken, converted the motion to dismiss to one for summary judgment. *See* Ariz. R. Civ. P. 12(b); *Yollin v. City of Glendale*, 219 Ariz. 24, 27, ¶ 6, 191 P.3d 1040, 1043 (App.2008) (basing summary judgment conversion on incorporation of the notice of claim and other documents with party's response to motion to dismiss); *Jones v. Cochise County*, 218 Ariz. 372, 375, ¶ 7, 187 P.3d 97, 100 (App.2008) (treating motion to dismiss as one for summary judgment because the attached notice of claim was a document outside the pleadings).[1] Accordingly, we review the trial court's ruling de novo.

### I. STATUTES OF LIMITATION DO NOT BEGIN TO RUN AGAINST DECLARATORY JUDGMENT CLAIMS UNTIL RELATED DAMAGE CLAIMS ACCRUE.

■ ¶ 16 A.R.S. § 12–821 provides: "All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." *See also* Black's Law Dictionary 32 (9th ed. 2009) (defining "action" as "any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree"). A cause of action accrues under A.R.S. § 12–821 when a plaintiff discovers or reasonably should have discovered that an injury was caused by the government's action. *See* A.R.S. § 12–821.01(B); *Stulce v. Salt River Project Agric. Improvement & Power Dist.*, 197 Ariz. 87, 90, ¶ 10, 3 P.3d 1007, 1010 (App.1999).

¶ 17 The City argued, and the trial court agreed, that CDR's claims accrued more than one year before its lawsuit because it was fully aware of its injuries and discovered or should have discovered they were caused by the City's actions no later than May 2004, when it first submitted a notice of claim to the City. CDR contends the statute of limitations for its declaratory judgment claims did

---

1. The City argues that the trial court was not required to convert the motion because the documents attached to its motion were public records. *See Strategic Dev. and Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, 64, ¶¶ 13–14, 226 P.3d 1046, 1050 (App.2010) (stating conversion is not required when the motion attaches extraneous material that is a matter of public record). But even if the City is correct that it attached only public records to its motion, CDR's response included, and the court did not strike, documents that were not public records.

not begin to run until an actual controversy arose between it and the City, which it asserts occurred when the City rejected its application for Parcel R in 2007. We reject both positions.

¶ 18 Arizona's Uniform Declaratory Judgments Act (the "Act"), A.R.S. §§ 12–1831 through –1846, is an "instrument of preventive justice" that allows a court to determine a person's "rights, status or other legal relations" under a municipal ordinance. *See* A.R.S. § 12–1832; *Elkins v. Vana,* 25 Ariz.App. 122, 126, 541 P.2d 585, 589 (1975). When a justiciable controversy exists, the Act allows adjudication of rights before the occurrence of a breach or injury necessary to sustain a coercive action (one seeking damages or injunctive relief). *Elkins,* 25 Ariz. App. at 126, 541 P.2d at 589. *See also Keggi v. Northbrook Prop. & Cas. Ins. Co.,* 199 Ariz. 43, 45, ¶ 10, 13 P.3d 785, 787 (App.2000) ("[A] justiciable controversy exists if there is 'an assertion of a right, status, or legal relation in which the plaintiff has a definite interest and a denial of it by the opposing party.'") (quoting *Samaritan Health Servs. v. City of Glendale,* 148 Ariz. 394, 395, 714 P.2d 887, 888 (App.1986)).

¶ 19 This court has previously noted that the "question of whether and when statutes of limitations are applicable to declaratory relief actions is a less than clear area of the law." *W. Cas. & Surety Co. v. Evans,* 130 Ariz. 333, 335, 636 P.2d 111, 113 (App. 1981). In *Western Casualty* we recognized that the filing of a declaratory judgment action does not, per se, constitute an accrual of an action sufficient to start the limitations clock. *Id.* at 336, 636 P.2d at 114. Instead, "[f]or an action to accrue for limitation purposes, some event in the nature of a breach of contract" must occur. *Id.* When a breach or actual injury does occur, a coercive cause of action may be brought and maintained even though declaratory relief has been requested. *See* Ariz. R. Civ. P. 57 (providing that judgment for declaratory relief is not precluded by "[t]he existence of another adequate remedy").

¶ 20 The time when a breach or injury occurs is the earliest time that a coercive claim can accrue and a limitations period can begin to run. *Norton v. Steinfeld,* 36 Ariz. 536, 543–44, 288 P. 3, 5 (1930) ("Until a breach [has] actually occurred there [is] nothing upon which appellants could base a suit and necessarily the statute of limitations could not be set in motion prior to the accrual of a cause of action."). We have, therefore, recognized that a "distinction exists between the point in time when a justiciable controversy arises which permits the filing of a declaratory relief action, and when an action accrues for purposes of a period of limitations." *W. Cas.,* 130 Ariz. at 336, 636 P.2d at 114.

¶ 21 Because Arizona has no statute of limitations expressly applicable to declaratory judgment actions, our courts have determined the appropriate limitations period by "examining the substance of that action to identify the relationship out of which the claim arises and the relief sought." *Vales v. Kings Hill Condo. Ass'n,* 211 Ariz. 561, 566, ¶ 17, 125 P.3d 381, 386 (App.2005). Declaratory judgment claims filed within the relevant analogous limitations period are treated as timely. *See La Canada Hills Ltd. P'ship v. Kite,* 217 Ariz. 126, 129, ¶ 9, 171 P.3d 195, 198 (App.2007).

¶ 22 In general, plaintiffs who fail to exhaust administrative remedies are barred from seeking relief from the courts. *Minor v. Cochise Cnty.,* 125 Ariz. 170, 172, 608 P.2d 309, 311 (1980). Damage actions against municipalities arising out of administrative decisions are subject to the exhaustion requirement. But it has long been held that exhaustion is not a prerequisite to an action for declaratory relief from an allegedly invalid zoning ordinance. *Manning v. Reilly,* 2 Ariz.App. 310, 312, 408 P.2d 414, 416 (1965). Taking considerations of justiciability, exhaustion, and limitations together, we hold that a claim for declaratory judgment concerning a zoning ordinance cannot be time-barred if it is brought *before* a related damage action accrues or within the applicable statutory period *after* it does.

¶ 23 A contrary holding—that the statute of limitations begins to run against declaratory judgment claims as soon as the plaintiff

becomes aware of a justiciable controversy—would serve only to encourage unnecessary litigation. Under such a rule, a prudent developer faced with discouraging comments from municipal staff would be compelled to bring a swift action for declaratory judgment or face a limitations bar. By permitting such actions to be brought at any time before the expiration of the limitations period for a damage action, putative litigants are free to attempt to resolve issues through the administrative process without placing their legal rights at risk. We conclude that this approach is consistent with the goal of the doctrine of administrative remedies.

■■■ ¶ 24 Here, the trial court ruled that CDR's three declaratory judgment claims were barred by the one-year statute of limitations. *See La Canada Hills*, 217 Ariz. at 129, ¶ 9, 171 P.3d at 198. We agree with both parties that A.R.S. § 12–821 prescribed the appropriate limitations period in this matter. But because CDR did not obtain a final administrative decision from DRB—much less exhaust its administrative appeals from an adverse decision—its damage claims never accrued. CDR's 2007 application for Parcel R had been "refused" by City "staff"—not finally disapproved at the end of the process that City Code Chapter 10–10 prescribes for land development projects.[2] It was therefore error to dismiss this case based on the one-year bar because no breach or injury had arisen to start the clock running on *any* statute of limitations.

¶ 25 At oral argument on appeal, the parties conceded that the complaint was based on City staff opinions that CDR's 2007 Plan violated the 1991 Code—not on any final action by the City. The staff opinions were sufficient to establish a justiciable controversy to support CDR's request for declaratory relief, but stopped well short of causing breach or injury necessary to support a coer-

cive cause of action. *See Black v. Siler*, 96 Ariz. 102, 105, 392 P.2d 572, 574 (1964) (defining a declaratory action as one that "simply declares the rights of the parties or expresses the opinion of the court on a question of law, without ordering anything to be done"). *Cf. Morton v. Pac. Constr. Co.*, 36 Ariz. 97, 103–04, 283 P. 281, 283 (1929) (approving court's refusal to enter a declaratory judgment when the judgment would not terminate the "uncertainty or controversy giving rise to the proceeding"). Without any final action by the City, no breach or injury occurred sufficient to support a coercive cause of action. And if no coercive cause of action accrued, no statute of limitations could have started running.

¶ 26 This result comports with the plain meaning of A.R.S. § 12–821, which requires that "[a]ll actions" against the city be brought within one year of when a "cause of action *accrues*." (Emphasis added.) *See U.S. Parking Sys. v. City of Phoenix*, 160 Ariz. 210, 211, 772 P.2d 33, 34 (App.1989) (requiring that an unambiguous statute be interpreted to mean what it plainly says unless an absurdity results). We therefore conclude that the trial court erred in dismissing claims 1, 2 and 6 on limitations grounds.

## II. DAMAGE CLAIMS

¶ 27 CDR asserts the City violated its due process rights (claim 3) and other constitutional rights (claim 5) when it rejected CDR's 2007 application for Parcel R based on the 1991 Code.[3] As it did below, the City asserts on appeal that CDR's claims must be dismissed because it failed to exhaust all administrative remedies before bringing suit.

■■■ ¶ 28 As we noted above, exhaustion of administrative remedies is usually required before an aggrieved party may seek

---

**2.** We are not persuaded by the City's contention that each new proposal using the "same defect" that is offered by a developer inappropriately "re-sets" the clock pursuant to A.R.S. §§ 12–821 and –821.01. Instead, we agree with CDR that the planning process includes negotiation and plan revision sufficient to create a new set of facts, acts and legal theories upon which to base a claim when a new proposal or plan is submitted. *See Haab v. Maricopa Cnty.*, 219 Ariz. 9, 14,

¶ 26, 191 P.3d 1025, 1030 (App.2008) (requiring a plaintiff to amend a timely filed notice of claim or file new notice to preserve claims based on a second set of acts).

**3.** CDR's complaint alleged numerous theories of constitutional liability. Its only argument on appeal, however, is based on the City's application of the 1991 Code to the Property.

relief from the courts. The doctrine allows "an administrative agency 'to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to mute judicial controversies.' " *Third & Catalina Assocs. v. City of Phoenix,* 182 Ariz. 203, 207, 895 P.2d 115, 119 (App.1994) (quoting *Estate of Bohn v. Waddell,* 174 Ariz. 239, 246, 848 P.2d 324, 331 (App.1992)). The doctrine is especially important in cases in which constitutional issues are raised because the administrative agency "may decide in favor of the aggrieved party on other grounds, thus mooting the constitutional issue and relieving the courts of the need to decide it." *Id.*

¶ 29 The United States Supreme Court has stated "there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 192, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). But as this court noted in *Aegis of Ariz. v. Town of Marana,* "although exhaustion of available administrative remedies is not required in order to bring claims under § 1983, a decision must be final in order for it to be reviewable by a court in the context of a claim brought pursuant to that statute. If a decision does not 'conclusively determine' an issue but, rather, 'leaves open the possibility' that the decision is subject to change, then it is not final or ripe for review and cannot support a § 1983 claim." 206 Ariz. 557, 567–68, 81 P.3d 1016, 1026–27 (App.2003) (citing *Williamson,* 473 U.S. at 193–94, 105 S.Ct. 3108).

¶ 30 City Code Chapter 10–10 defines the "standards and regulations for review and approval of all proposed development of property in the City." Code 10–10–002–0001(A). It includes, *inter alia,* process-es for site plan review, modifications to existing planned unit developments, zoning map amendments, and administrative appeals. *See* Codes 10–10–004–0003, –0011, –0007, –0006. The DRB is required to "review and act on" all site development plans pursuant to the processes outlined in Chapter 10–10. Code 10–09–006–0001(D)(1). The DRB must also informally review all conceptual plats, Code 10–09–006–0001(D)(5), to "'head off' any problems ... as early in the process as possible," but the DRB does not take any "formal action" on the items identified during that review. Code 10–10–003–0002(A). Any person "aggrieved" by any "order, requirement, decision, or determination" made to enforce Chapter 10–10 can appeal within ten calendar days of the decision to the Board of Adjustment. Code 10–10–004–0006.

¶ 31 CDR did not seek a final ruling rejecting its application, and could not therefore have exhausted its administrative remedies before filing its due process and § 1983 claim.[4] CDR's claims were therefore not barred—they were not ripe. The trial court properly dismissed claims 3 and 5, but because those claims were merely premature, we vacate that portion of its ruling dismissing those claims with prejudice.

### III. MISREPRESENTATION CLAIM

¶ 32 Finally, CDR argues its misrepresentation claim did not accrue until November 2007, when it learned that, contrary to the City's prior representations, the 1970 Zoning Code had been amended and allowed single-family dwellings on property zoned RM–M pursuant to City Ordinance No. 900. The City argues the superior court properly dismissed this claim because CDR did not file a notice of claim regarding the City's alleged misrepresentation as required by A.R.S. § 12–821.01.[5] We agree with the City.

---

4. We note as well that the record reflects that the City was willing to accept and review CDR's application and identify conflicts between the 1991 Code and CDR's master plan "on an item by item basis as part of the development review process." Pursuant to Code 10–10–004–0001, CDR could also have appealed the results of this more formal process.

5. Although CDR was not required to plead compliance with the notice of claim statute, *Pritchard v. State,* 163 Ariz. 427, 430, 432, 788 P.2d 1178, 1181, 1183 (1990), CDR was required to respond in some fashion once the City raised the defense. We reject CDR's specific argument that the trial court erred by failing to allow it to amend its complaint, because it did not request leave to amend below. *Ross v. Ross,* 96 Ariz. 249, 252, 393 P.2d 933, 936 (1964).

¶ 33 A person with a damage claim against a public entity must file, within 180 days after the cause of action accrues, a notice of claim containing facts sufficient to permit the public entity or employee to understand the basis upon which liability is claimed. A.R.S. § 12–821.01(A). The failure to timely file a notice bars the claim and is not excused by actual notice or substantial compliance. *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 213 Ariz. 525, 527, ¶ 10, 144 P.3d 1254, 1256 (2006). CDR contends its misrepresentation claim accrued in 2007 when it first learned about the existence of Ordinance No. 900 and cites a July 3, 2007 notice of claim letter it sent to the City.[6] However, the July 3, 2007 letter does not contain any allegations concerning the City's alleged misrepresentation regarding Ordinance No. 900, and CDR makes no argument that it subsequently provided notice of that claim to the City. *See Haab*, 219 Ariz. at 14, ¶ 26, 191 P.3d at 1030. Because CDR did not comply with A.R.S. § 12–821.01 with respect to its misrepresentation claim, the claim is barred.

### CONCLUSION

¶ 34 For the foregoing reasons, we vacate that portion of the trial court's ruling that dismissed claims 1, 2 and 6 and remand for further proceedings consistent with this decision. We affirm the trial court's dismissal of claims 3 and 5 but vacate that portion of the court's ruling that dismissed those claims with prejudice. Finally, we affirm the trial court's dismissal of claim 4.

CONCURRING: PHILIP HALL, Presiding Judge and SHELDON H. WEISBERG, Judge.

---

**6.** Although this letter specifically states that it "does not contain a full explanation of [CDR's] claims" and does not "constitute an admission that A.R.S. § 12–821.01 applies to this situation," it does state a certain sum CDR "would be willing to accept in settlement of its present claim." *See* A.R.S. § 12–821.01 (requiring claim to contain facts sufficient to permit the public entity to "understand the basis upon which liability is claimed" and "a specific amount for which the claim can be settled and the facts supporting that amount"); *Yollin*, 219 Ariz. at 28, ¶ 9, 191 P.3d at 1044 (requiring the notice of claim to contain a specific amount for which the claimant would be willing to settle the claim). CDR characterized the letter as a "notice of claim" and the City never objected to that characterization. Although the City does assert that the 2007 letter is "deficient as a matter of law," its objection is to the letter's content as it relates to accrual of the claim—not that it lacks any elements necessary to be considered an effective notice of claim.