IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

STARR PASS RESORT DEVELOPMENTS, LLC,
A DELAWARE LIMITED LIABILITY COMPANY,
*Plaintiff/Appellant*,

*v.*

PIMA COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF ARIZONA;
3800 WSPB BUYER, LLC, A FOREIGN LIMITED LIABILITY COMPANY;
CREF3 SP A PARTICIPATION, LLC, A FOREIGN LIMITED LIABILITY COMPANY,
*Defendants/Appellees*,

SWVP STARR PASS, LLC,
*Intervenor*.

No. 2 CA-CV 2023-0082
Filed May 22, 2024

Appeal from the Superior Court in Pima County
No. C20212971
The Honorable Michael J. Butler, Judge

**AFFIRMED**

COUNSEL

Stubbs & Schubart P.C., Tucson
By G. Lawrence Schubart
*Counsel for Plaintiff/Appellant*

Rusing Lopez & Lizardi P.L.L.C, Tucson
By Pat Lopez III, Matthew A. Bailey, and Alexander P. Valentine
*Counsel for Defendant/Appellee Pima County*

Ballard Spahr LLP, Phoenix
By Brian Schulman and Craig C. Hoffman
*Counsel for Defendants/Appellees 3800 WSPB Buyer LLC and CREF3 SP A Participation LLC and Intervenor SWVP Starr Pass, LLC*

---

**OPINION**

Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Staring and Judge O'Neil concurred.

---

S K L A R, Judge:

**¶1**　　　　Under Rule 12(d) of the Arizona Rules of Civil Procedure, trial courts must provide parties a "reasonable opportunity" to present pertinent material when converting a motion to dismiss to one for summary judgment. This case requires us to interpret that requirement in the context of competing claims to a fee collected from guests at a resort hotel. The fee, called an Environmental Enhancement Fee ("Enhancement Fee"), arises out of a Development Agreement between Pima County and the resort's developer. After extensive litigation and a receivership, a buyer in the receivership acquired both the resort and the developer's rights under the Development Agreement. That buyer and the developer's assignee now dispute which of them is entitled to the developer's share of the fee.

**¶2**　　　　The developer's assignee is appellant Starr Pass Resort Developments, LLC ("SPR Developments"). The buyer is appellee WSPB Buyer, LLC ("Buyer"). After SPR Developments filed this lawsuit and alleged that it was entitled to the fee, Buyer and appellee Pima County moved to dismiss for failure to state a claim under Rule 12(b)(6). Both the motion and the opposition attached numerous documents, prompting the trial court to convert the motion to one for summary judgment. That conversion triggered Rule 12(d)'s "reasonable opportunity" requirement.

**¶3**　　　　The trial court followed that requirement by allowing each party to present seven-page supplemental memoranda and additional exhibits. SPR Developments argues that the court should have required the defendants to answer the complaint and allowed for discovery. We

disagree. We conclude that courts have broad discretion in complying with Rule 12(d), and the court properly exercised that discretion here.

¶4 We also reject SPR Developments' substantive challenge to the summary-judgment ruling. SPR Developments pledged its right to the Enhancement Fee as collateral for a loan upon which it defaulted. That default led to the receivership and the ultimate transfer to Buyer. As such, there is no genuine dispute of material fact and, as a matter of law, SPR Developments retains no right to the Enhancement Fee. We therefore affirm the trial court's grant of summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 We view the evidence and all reasonable inferences in the light most favorable to SPR Developments, the party against whom summary judgment was entered. *See Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, ¶ 2 (2003). The facts arise out of a series of agreements. Although many of the versions in our record are not executed, the parties do not dispute their authenticity or validity. We therefore treat all the agreements as operative.

## I. Developer and Pima County enter into the Development Agreement

¶6 In 1998, Starr Pass Resort LLC ("Developer") entered into the Development Agreement with Pima County. Among other things, Developer agreed to convey to Pima County 213 acres of property adjoining a planned resort. That property was intended to "expand[] Tucson Mountain Park." The Developer also agreed to convey certain property constituting a "Biological Corridor Core."

¶7 Developer wished to recover the costs it incurred to acquire the property it conveyed. In the Development Agreement, it therefore agreed with Pima County that the eventual resort manager would collect the Enhancement Fee. That fee would equal two percent of room-rental charges and other purchases. The fee's stated purpose was to "defray[] the costs of the acquisition of the Biological Corridor and the costs of managing, maintaining, preserving and enhancing open space and trails . . . and in acquiring real property to add to or increase the size of Tucson Mountain Park." The fee was to be collected for twenty years and allocated between Pima County and Developer, as set forth in ancillary agreements. The Development Agreement states that it "shall inure to the benefit of and be binding upon the successors and assigns of the Parties," and it specifies an assignment process.

## II.   The property is annexed into the City of Tucson, which requires the creation and amendment of several agreements

¶8        When the Development Agreement was entered, the resort property was outside the Tucson city limits.   However, in 2002, the Developer and the City of Tucson entered into a Pre-Annexation Development Agreement (the "Pre-Annexation Agreement").   That agreement allowed the resort property to be annexed into the city.

¶9        After consenting to the annexation, Pima County entered into an Intergovernmental Agreement with the City of Tucson.  That agreement facilitated the annexation and addressed the Enhancement Fee's collection and distribution.   It provided that the City of Tucson—which would become entitled to receive the Enhancement Fee from the resort—must pay Pima County an amount equal to the fee.  Those payments would satisfy and "offset" Developer's obligation under the Development Agreement to pay the Enhancement Fee to Pima County.

¶10        To allow for the annexation, the Development Agreement was amended in 2002 ("2002 Amendment").  The amendment conformed the Enhancement Fee provisions to the Intergovernmental Agreement.

¶11        Around the same time, Developer transferred its rights under the Development Agreement to SPR Developments.  It did so through a written and recorded Assignment and Assumption of Starr Pass Resort Hotel Development Agreement ("2002 Assignment").  In 2005, the resort opened, and Pima County began receiving the Enhancement Fee.

## III.   SPR Developments defaults on its loan obligations, leading to years of litigation and a foreclosure

¶12        In 2006, SPR Developments paid off its construction loan and obtained a new $145 million loan secured by a deed of trust.  U.S. Bank N.A. ultimately became the note-holder and secured party.

¶13        Important to this dispute is the deed of trust's description of the collateral.  The collateral includes all

> agreements [and] contracts . . . pertaining to . . .
> any business or activity conducted in, at or on
> the Land and any part thereof or any
> Improvements and all right, title and interest of
> [SPR Developments] therein and thereunder,

4

including . . . the right, upon the happening of
any default hereunder, to receive and collect
any sums payable to [SPR Developments].

It also includes "all rents, additional rents, hotel room rentals, other hotel
services revenue, other revenues, issues and profits . . . from the Land and
the Improvements . . . ."

¶14　　　　In October 2011, U.S. Bank sued SPR Developments for
defaulting on its loan obligations. As authorized by the loan documents,
the trial court ordered the appointment of a receiver for the resort and "all
other collateral relating thereto." The order also vested the receiver "with
complete and exclusive control and possession of the Property and all other
collateral securing the indebtedness owed to [U.S. Bank]." We take judicial
notice of that order, though it is not in the record before us. *See* Ariz. Evid.
401; *In re Sabino R.*, 198 Ariz. 424, ¶ 4 (App. 2000) ("It is proper for a court
to take judicial notice of its own records or those of another action tried in
the same court.").

¶15　　　　Upon SPR Developments' request, Pima County then stopped
disbursing the Enhancement Fee. Pima County retained the fees that
continued accruing through the eight years of litigation.

¶16　　　　In August 2017, the trial court entered a judgment in favor of
U.S. Bank for more than $192 million. We affirmed the court's judgment on
appeal. *U.S. Bank Nat'l Ass'n v. Starr Pass Resort Developments LLC*,
No. 2 CA-CV 2018-0030, 2019 WL 2237471 (Ariz. App. May 22, 2019) (mem.
decision).

¶17　　　　In April 2019, U.S. Bank assigned its rights and interest in the
deed of trust to CREF3 SP A Participation, LLC ("CREF3"), another
appellee. Two months later, the real property was sold at a trustee's sale to
Buyer for more than $85 million. The receiver and Buyer also entered into
an Assignment and Assumption of Starr Pass Resort Hotel Development
Agreement ("Receiver's Assignment"). Under the Receiver's Assignment,
the receiver transferred all the receiver's "right, title and interest in, to and
under the Development Agreement" to Buyer.

¶18　　　　Pima County, CREF3, and Buyer amended the Development
Agreement in June 2020 ("2020 Amendment"). That amendment
authorized Pima County to pay Buyer the Enhancement Fee that had
accrued since approximately 2011, totalling $3,784,397.50. The 2020

Amendment also provided that, going forward, Pima County would pay the Enhancement Fee to Buyer.

## IV.    SPR Developments files this litigation, seeking to recover the Enhancement Fee

**¶19**        In June 2021, SPR Developments filed this action against Pima County, later adding CREF3 and Buyer as defendants. SPR Developments alleged that Pima County breached the Development Agreement by disbursing the accrued Enhancement Fee to Buyer without SPR Developments' consent. SPR Developments sought a declaratory judgment that SPR Developments remains entitled to receive the Enhancement Fee.

**¶20**        Although Pima County filed an answer, Buyer and CREF3 filed a motion to dismiss under Rule 12(b)(6) of the Arizona Rules of Civil Procedure. Pima County later joined that motion. The motion argued that SPR Developments' rights under the Development Agreement, including any entitlement to the Enhancement Fee, were extinguished by the trustee sale. The motion attached several documents as exhibits.

**¶21**        After oral argument, the trial court ruled that it would apply Rule 12(d) and treat the motion to dismiss as one for summary judgment. In light of Rule 12(d)'s "reasonable opportunity" requirement, the court allowed each party to file a supplemental memorandum not to exceed seven pages. It did not require the parties to submit separate statements of facts under Rule 56(c)(3).

**¶22**        SPR Developments moved for reconsideration. It asked the trial court to deny the motion to dismiss and allow discovery. The court denied the motion.

**¶23**        After receiving the supplemental memoranda, the trial court granted summary judgment in favor of CREF3, Buyer, and Pima County. SPR Developments filed a motion to vacate the ruling, which the court denied. The court then entered judgment dismissing SPR Developments' claims with prejudice and awarding Pima County $70,170 in attorney fees and $3,269.26 in taxable costs. This appeal followed.

## CONVERSION OF MOTION TO DISMISS

**¶24**        We first address whether the trial court complied with Rule 12(d)'s requirement that, after a motion to dismiss is converted, parties

"must be given a reasonable opportunity to present all the material that is pertinent to the motion."

## I. Rule 12(d)'s "reasonable opportunity" standard does not compel courts to require an answer, discovery, or statements of facts

¶25 When a motion to dismiss relies on matters "outside the pleadings" that the trial court has not excluded, the motion must be converted to one for summary judgment. Ariz. R. Civ. P. 12(d). Two categories of documents are not "outside the pleadings." These are "a complaint's exhibits" and "public records regarding matters referenced in a complaint." *See Coleman v. City of Mesa*, 230 Ariz. 352, ¶ 9 (2012); *see also Workman v. Verde Wellness Center, Inc.*, 240 Ariz. 597, ¶ 13 (App. 2016) (noting case law not requiring conversion for documents "central to the complaint" but not attached to it, though also noting that *Coleman* arguably disapproves of this exception).

¶26 The complaint in this case attached no exhibits. It did reference many public records, but at least some of the exhibits to the motion to dismiss and responses are not public record and arguably are not "matters referenced in the complaint." The trial court therefore properly converted the motion to dismiss to a summary-judgment motion.

¶27 Conversion triggers Rule 12(d)'s "reasonable opportunity" requirement, which few cases address. Dicta in one case indicates that a court satisfies this requirement if it gives parties "the opportunity to file a written response or reply." *Belen Loan Investors, LLC v. Bradley*, 231 Ariz. 448, n.7 (App. 2012). SPR Developments now asks that we construe the "reasonable opportunity" as mandating that: (1) defendants file an answer to the complaint; (2) discovery be allowed; and (3) the parties file separate statements of facts under Rule 56(c)(3).

¶28 SPR Developments' argument that an answer is required is at odds with the Arizona Rules of Civil Procedure. A motion to dismiss tolls the deadline for an answer. Ariz. R. Civ. P. 12(a)(2)(A) (establishing deadline for responsive pleading after motion to dismiss is denied); *see also* Ariz. R. Civ. P. 7 (defining permissible pleadings). And because Rule 12(d) authorizes conversion of motions to dismiss, it necessarily implies that conversion can occur before an answer is filed. Nor does Rule 12(a)(2)(A), which imposes a deadline for responsive pleadings after a Rule 12 motion is denied or postponed, contemplate such pleadings after a motion to dismiss is converted.

**¶29**        At oral argument, SPR Developments sought to support its argument that an answer was required by citing Rule 12(h). That subsection provides that the defense of failure to state a claim upon which relief can be granted is not waived by failure to make a Rule 12(b)(6) motion. But Rule 12(h) does not authorize a party to file such a motion after filing an answer. Rather, it provides that, after an answer, the defense may be asserted by other means. These include a motion for judgment on the pleadings under Rule 12(c) or a trial motion. Ariz. R. Civ. P. 12(h)(2). It therefore does not imply that an answer is required after a motion to dismiss is converted. While Rule 12(d) also provides for conversion of motions for judgment on the pleadings, an answer will necessarily have been filed in such cases.

**¶30**        SPR Developments' next argument, that conversion is improper without allowing discovery, is also inconsistent with the rules. Rule 26(f)(1) prohibits discovery until after a party serves its initial disclosures under Rule 26.1, "[u]nless the court orders otherwise for good cause." A party is not required to serve their disclosures until thirty days after the first responsive pleading. Ariz. R. Civ. P. 26.1(f)(1). Any motion, including a motion to dismiss, is not a responsive pleading. Ariz. R. Civ. P. 7 (listing only pleadings allowed in Arizona Rules of Civil Procedure, none of which are motions); *In re $70,070 in U.S. Currency*, 236 Ariz. 23, ¶ 11 (App. 2014) *see also* Ariz. R. Civ. P. 7 (defining possible pleadings). Thus, conversion of a motion to dismiss will generally occur before the rules provide for discovery to begin.

**¶31**        Parties seeking discovery after a motion to dismiss is converted already have a mechanism for doing so—Rule 56(d). That rule applies when a party "cannot present evidence essential to justify its opposition" to a summary-judgment motion. Ariz. R. Civ. P. 56(d)(1). It allows a party to file a request for expedited relief. The request must be accompanied by an affidavit detailing the evidence the party wishes to obtain, the methods it wishes to use, and an estimate of the time that discovery will require. *Id.* We see no reason that Rule 56(d) would be unavailable after a motion to dismiss is converted. But the broader right to discovery for which SPR Developments advocates goes beyond the "reasonable opportunity to present all the material that is pertinent to the motion" required by Rule 12(d).

**¶32**        We also see no basis for SPR Developments' third proposed requirement, that parties submit separate statements of facts. *See* Ariz. R. Civ. P. 56(c)(3). SPR Developments has cited no authority that a

"reasonable opportunity" necessarily requires such statements. Nor do other cases concerning converted motions require a statement of facts, even where substantial material outside the pleadings has been submitted. *See, e.g.*, *Canyon del Rio Investors, L.L.C. v. City of Flagstaff*, 227 Ariz. 336, ¶ 15 (App. 2011) (motion to dismiss attached zoning documents and response incorporated correspondence and other zoning documents); *Yollin v. City of Glendale*, 219 Ariz. 24, ¶ 6 (App. 2008) (motion to dismiss attached notice of claim and 100 pages of medical records). We decline to read such a requirement into the rules. *See Roberts v. State*, 253 Ariz. 259, ¶ 20 (2022) (providing that "court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions" (quoting *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965))); *see also Philips v. O'Neil*, 243 Ariz. 299, ¶ 8 (2017) ("We interpret court rules according to the principles of statutory construction.").

## II. Trial courts have discretion in providing a "reasonable opportunity" to present pertinent material, and the court did not abuse its discretion here

**¶33** Rather than imposing requirements not set forth in the rule, we conclude that Rule 12(d) allows courts discretion to tailor a "reasonable opportunity" to a particular case's needs. *Cf.* Ariz. R. Civ. P. 1 (civil rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). This conclusion is consistent with the advisory committee's notes explaining the predecessor to Federal Rule of Civil Procedure 12(d), which is substantively identical to the Arizona rule. The notes provide that, when a motion to dismiss is converted, the rule ensures "that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion." Fed. R. Civ. P. 12, advisory committee notes to 1946 Amendment (subdivision (b)).

**¶34** The nature of the procedures necessary to satisfy Rule 12(d) will vary depending on the case. In some cases, courts have resolved converted motions without additional briefing, if all relevant material is attached to the motion to dismiss and no party asserts that anything further is required. *See, e.g.*, *Canyon del Rio Investors*, 227 Ariz. 336, n.1; *Yollin*, 219 Ariz. 24, ¶ 6. Fact-intensive cases such as this one may require additional briefing or other procedures in the trial court's discretion. Courts might, for example, exercise their discretion to require an answer, discovery, or a statement of facts—though as we have explained, the rules do not generally

impose these requirements. But courts should ultimately be guided by the extent to which additional procedures are necessary to allow each side to fairly present its evidence without being surprised.

**¶35**        In this case, the trial court exercised its broad discretion by allowing the parties to file seven-page memoranda and exhibits after converting the motion. SPR Developments has not shown that the seven-page limit was error. As the court noted, the timeline and relevant documents were not in dispute. The court also considered a 16-page motion to vacate and numerous arguments and pieces of evidence presented by SPR Developments. These included eighty-two pages of exhibits attached to SPR Developments' motion for reconsideration of the order converting the motion. Those exhibits included a two-page affidavit by SPR Developments' president regarding the relevant agreements' purpose and intent. In addition, the court considered a supplemental objection attaching seventy pages of exhibits. These included another affidavit by SPR Developments' president, this one totaling eight pages, that provided additional context and information about the agreements.

**¶36**        Notably, SPR Developments did not file a Rule 56(d) request. *See Workman.*, 240 Ariz. 597, ¶ 15 (rejecting argument that court improperly deprived party of reasonable opportunity to present pertinent material where party did not "request an order for additional discovery"). Nor did SPR Developments' motion for reconsideration or its supplemental objection specifically identify any evidence that it needed to present its arguments, as Rule 56(d) requires. At oral argument in this court, SPR Developments referred to potential depositions of Pima County representatives involved in negotiating the Development Agreement. But SPR Developments did not move for any depositions in the trial court, and we will not consider this argument for the first time on appeal. We therefore conclude that the court complied with the Arizona Rules of Civil Procedure in converting the motion to dismiss to one for summary judgment.

## SUMMARY-JUDGMENT RULING

**¶37**        We turn next to whether the trial court properly granted summary judgment. SPR Developments argues that there were genuine issues of material fact as to whether it was entitled to the Enhancement Fee. We review a trial court's grant of summary judgment de novo. *Glazer v. State*, 237 Ariz. 160, ¶ 29 (2015). Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).

## I.  The Enhancement Fee was among the collateral transferred through the receivership to Buyer

¶38        This case turns on the proper interpretation of the agreements.  Contract interpretation is a question of law we review de novo.  *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, ¶ 9 (App. 2009).  The purpose of contract interpretation is to determine and enforce the parties' intent.  *Id.*  In doing so, courts "must first consider the plain meaning of the words . . . in the context of the[] contract as a whole."  *Id.*  When the terms of a contract are clear and unambiguous, a court must give effect to the contract as written.  *Id.*  The court may consider extrinsic evidence only if contractual language is reasonably susceptible to the interpretation asserted by the proponent of the evidence.  *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154 (1993).

¶39        Here, the parties do not dispute that the Development Agreement initially granted Developer the right to collect its portion of the Enhancement Fee.  Nor do they dispute that this right passed to SPR Developments through the 2002 Assignment.  They do, however, dispute what happened next.

¶40        SPR Developments argues that a genuine dispute of material fact exists as to whether it maintained the right to the Enhancement Fee through the annexation, loan, default, litigation, receivership, trustee's sale, and Receiver's Assignment.  Pima County, Buyer, and CREF3 argue, by contrast, that the right passed to Buyer.  They argue that they acquired the rights as part of the collateral that had been pledged by SPR Developments and was transferred through the receivership.  They also argue that under the Development Agreement's terms, the right to the Enhancement Fee inured to Buyer as a successor or assignee.

¶41        We first address whether the developer's share of the Enhancement Fee was among the collateral, which was ultimately transferred to Buyer.  The most relevant contractual provision is the deed of trust's description of the collateral.  The Enhancement Fee fits within at least two categories.  First is the provision that the collateral includes the right to "receive and collect any sums payable" under any "contracts . . . pertaining to . . . any business or activity conducted" at the resort.  The Development Agreement is such a contract, and the Enhancement Fee is payable under it.  Second is the provision that the collateral includes "all

11

rents" and other "revenues" arising out of the resort. The Development Agreement requires that the Enhancement Fee be added to all charges at the resort, including room-rental charges. It therefore constitutes "rent[]" or "revenue[]."

**¶42** As part of the collateral, the right to the developer's share of the Enhancement Fee was also included in the prior litigation's receivership estate. This was consistent with the deed of trust, which granted U.S. Bank broad authority to seek a receiver upon SPR Developments' default. Specifically, it provided that the receiver could be appointed over the resort, hotel revenues, and accounts, as well as all "agreements" relating to the resort. This necessarily included the Development Agreement.

**¶43** Consistent with this authority, the order appointing a receiver placed the receiver over the resort and "all other collateral relating thereto." The receiver was also "vested with complete and exclusive control and possession of the Property and all other collateral securing the indebtedness owed to [U.S. Bank]." Exercising these powers and pursuant to court order, the receiver transferred the right to the Enhancement Fee to Buyer through the Receiver's Assignment. This was a valid exercise of the receiver's authority.

## II. SPR Developments' counterarguments are unavailing

**¶44** SPR Developments, however, argues that "the intent regarding the rights to the [Enhancement Fee] is separate and apart from . . . the collateral foreclosed at the Trustee's sale." When the resort property was annexed into the City of Tucson in 2002, SPR Developments argues, "the [Enhancement Fee] was no longer covered directly by the Development Agreement; it was instead controlled" by the Pre-Annexation Agreement, which allowed Pima County to consent to the property's annexation.

**¶45** We are unpersuaded, for two reasons. First, nothing in the Pre-Annexation Agreement purported to replace the Development Agreement. Instead, the Pre-Annexation Agreement required the City of Tucson to pay Pima County "the amounts [the county] would receive as the Environmental Enhancement Fee under the County Development Agreement." That agreement further provided for disbursement by the City of Tucson "as provided in the County Development Agreement." The Intergovernmental Agreement between the City of Tucson and Pima County, which accompanied the Pre-Annexation Agreement, imposed similar terms. It provided that the City of Tucson's payment would "satisfy

Developer's obligation to pay the Environmental Enhancement Fee under the Development Agreement."

¶46            Second, as we have explained, the Enhancement Fee was not part of the collateral simply because it arose under the Development Agreement.   It was also part of the collateral because it arose out of "agreements" and "contracts" relating to the resort, which included the Pre-Annexation Agreement and Intergovernmental Agreement.   As a result, it is also irrelevant whether, as SPR Developments argues, the City of Tucson collected the Enhancement Fee as a "tax" after the annexation. Even if the fee were best understood as a "tax," it would be payable under the Development Agreement and therefore part of the collateral.   In addition, as we have explained, the Enhancement Fee is part of the collateral as a "rent[]" and "revenue[]" arising from the resort.

¶47            SPR Developments also makes an argument under a declaration of covenants, conditions and restrictions that secures the resort manager's obligation to collect the Enhancement Fee.   Those CC&Rs provided that the Enhancement Fee "shall be a continuing lien upon the Resort Property."   They further provided that the CC&Rs "shall run with the Resort Property" and bind successors and assigns.   In light of that language, SPR Developments argues that the CC&Rs had higher priority than the deed of trust.   But the CC&Rs simply secured the resort manager's obligation to Developer and Pima County to collect the Enhancement Fee, not assignment of the right to receive the Enhancement Fee.   The CC&Rs have no relevance here.

¶48            Finally, SPR Developments disputes whether the right to the Enhancement Fee inured to Buyer under the terms of the Development Agreement itself.   We need not address this issue.   Nothing in the Development Agreement precluded SPR Developments from pledging its right to the Enhancement Fee as collateral.

III.    **Given our resolution, we need not address SPR Developments' argument that the prior litigation did not resolve the parties' rights to the Enhancement Fee**

¶49            The parties next dispute the extent to which the prior litigation resolved the right to the Enhancement Fee.   SPR Developments argues that the litigation did not resolve the issue.   It points to a July 2020 ruling ordering the release of certain deeds to Pima County and making "no determination with respect to the alleged rights, claims, and potential entitlement of any party to the Environmental Enhancement Fees."   The

appellees argue, by contrast, that the August 2017 judgment conclusively awarded the Enhancement Fee to U.S. Bank.  But given our conclusion that Buyer has the right to the Enhancement Fee, we need not address this issue.

**¶50**        SPR Developments also argues that Buyer is judicially estopped from arguing that the Enhancement Fee was within the receiver's power to transfer.  It points to a statement from Buyer and CREF3 in the prior litigation that the Enhancement Fee was "[n]ever part of the receivership estate."  Judicial estoppel prevents a party that has taken a position in a judicial proceeding from taking an inconsistent position in a subsequent case involving the same parties and questions.  *In re Marriage of Thorn*, 235 Ariz. 216, ¶ 27 (App. 2014).  A party is estopped from asserting inconsistent positions only if it was successful in the prior proceeding.  *Id.*

**¶51**        Read in context, Buyer's assertion in the prior proceeding is not inconsistent with its position here.  The prior statement described the Enhancement Fee as "a certain sum that was held by Pima County."  As Buyer explained at oral argument, this was a reference to the accrued fees being inaccessible to the receiver because Pima County was holding them.  It does not follow, though, that the right to the fees was outside the collateral.  Nor does it follow that the receiver lacked the power to transfer the fees or the right to receive them, at least upon court order.  Thus, judicial estoppel does not apply.

## TRIAL COURT ATTORNEY FEES

**¶52**        The trial court awarded attorney fees to Pima County under A.R.S. § 12-341.01, as this action arises out of contract.  On appeal, SPR Developments challenges the court's decision to award Pima County the full $70,170 it requested.  We review an award of attorney fees for an abuse of discretion and will affirm if there is any reasonable basis for the award.  *See Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, ¶ 18 (App. 2004).

**¶53**        SPR Developments argues that:  (1) the affidavit in support of Pima County's fee application did not disclose whether the county has actually paid or agreed to pay that amount; (2) the county's counsel engaged in block-billing; and (3) the county's affidavit did not sufficiently explain how its counsel avoided duplication, given that five lawyers worked on the matter.  Additionally, SPR Developments argues that the trial court erred in granting Pima County's fee request without Pima County first filing a reply to SPR Developments' objection.

¶54 The trial court did not abuse its discretion. It reviewed the fee application with the supporting affidavit and itemized billing statements, and it found that they contained the necessary information required by law. *See Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 188 (App. 1983). It also found that no duplicative work was performed and that the requested attorney fees were reasonable and necessary. Moreover, while Pima County's counsel engaged in block-billing—a practice we discourage—a court does not abuse its discretion by awarding attorney fees that have been block-billed. *See RS Indus., Inc. v. Candrian*, 240 Ariz. 132, ¶ 21 (App. 2016). As for the lack of a reply, the court did not rule until nearly thirty days after a reply would have been due. *See* Ariz. R. Civ. P. 7.1(a)(3) (setting reply deadline); *see also* Ariz. R. Civ. P. 54(g)(4) (providing that motions for attorney fees are governed by Rule 7.1). The court was not required to wait longer or request a reply before ruling. Nor has SPR Developments explained how it was prejudiced by the court ruling before a reply was filed.

## DISPOSITION

¶55 We affirm the trial court's grant of summary judgment and award of attorney fees and costs. None of the appellees request their attorney fees or costs on appeal. However, as the prevailing parties, they are entitled to recover their appellate costs upon compliance with Rule 21(b) of the Arizona Rules of Civil Appellate Procedure. *See* A.R.S. § 12-341.